# In the United States Court of Federal Claims

No. 13-130C
(Filed: July 26, 2016)

| | |
|---|---|
| MANUEL ALMANZA, et al., AND OTHER SIMILARLY SITUATED PERSONS,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Keywords: Fair Labor Standards Act; 29 U.S.C. §§ 201–219; Time spent in training; 5 C.F.R. § 551.423; Summary Judgment; RCFC 56(a). |

*David Luis Kern*, Kern Law Firm, El Paso, TX, with whom were *Mark Greenwald*, Law Offices of Mark Greenwald, San Antonio, TX, and *Robert J. Gaudet, Jr.*, El Paso, TX, for the Plaintiffs.

*Albert S. Iarossi*, Trial Attorney, with whom were *Benjamin C. Mizer*, Principal Deputy, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Scott D. Austin*, Assistant Director, Commercial Litigation Branch, U.S. Department of Justice, Washington, DC, for Defendant. *Tobias J. Weyer* and *James L. Attanasio*, Office of Chief Counsel, United States Customs and Border Protection, Of Counsel.

**OPINION AND ORDER**

**Kaplan, Judge.**

Plaintiffs in this case are 290 Customs and Border Protection Officers (CBPOs) and Border Patrol Agents (BPAs or "agents") who are now or were formerly employed by U.S. Customs and Border Protection, Department of Homeland Security (CBP). Pls.' Mot. Summ. J. (Pls.' Mot.) at 1, ECF No. 79. They filed this action to recover overtime pay for time that they spent studying outside of regular working hours while attending CBP's Detection Canine Instructor Course. Id.

The claims of the CBPOs, who allege that they are entitled to overtime pay and other related relief pursuant to the Customs Officer Pay Reform Act, 19 U.S.C. § 267, or, in the alternative, the Fair Labor Standards Act (FLSA), as amended, 29 U.S.C. §§ 201–219, are currently in the alternative dispute resolution (ADR) process before an ADR judge. Id.; ECF No. 94. The claims of the Border Patrol Agents, which are based exclusively on the FLSA, are pending before this Court on the parties' cross-motions for summary judgment. For the reasons

set forth below, the government's motion for summary judgment as to the Border Patrol Agents' claims is **GRANTED** and the Plaintiffs' cross-motion is **DENIED**.

## BACKGROUND[1]

### I. The Fair Labor Standards Act and OPM Regulations

The Fair Labor Standards Act provides employees an entitlement to be paid at overtime rates if their employer "suffers or permits" them to work more than forty hours per week. See 29 U.S.C. § 207(a)(1) (2012); 5 C.F.R. § 551.104 (2016). This provision has applied to nonexempt federal employees since the FLSA was extended to employees of the federal government in 1974. See 29 U.S.C. § 203(e)(2).

The Office of Personnel Management (OPM) is the federal agency charged with administering the FLSA with respect to federal employees. 29 U.S.C. § 204(f); see also Billings v. United States, 322 F.3d 1328, 1331 (Fed. Cir. 2003). Pursuant to OPM's regulations, "[h]ours of work means all time spent by an employee performing an activity for the benefit of an agency and under the control or direction of the agency." 5 C.F.R. § 551.104. Particularly relevant to this case is OPM's regulation specifying that while "[t]ime spent in training during regular working hours shall be considered hours of work," id. § 551.423(a)(1), time spent in training outside regular working hours is considered "hours of work" only if:

> (i) The employee is directed to participate in the training by his or her employing agency; and
>
> (ii) The purpose of the training is to improve the employee's performance of the duties and responsibilities of his or her current position.

Id. § 551.423(a)(2).

### II. U.S. Customs and Border Protection's Canine Program

CBP manages the nation's international borders to facilitate lawful international travel and trade, and to enforce customs, immigration, border security, and agriculture protection laws. See About CBP, U.S. Customs and Border Protection, www.cbp.gov/about (last visited July 25,

---

[1] The facts in this section are based on the deposition transcripts and the documentary evidence supplied by the parties in support of their summary judgment motions. Citations to deposition transcripts include the name of the witness, the page number within that witness' deposition transcript, as well as the corresponding page number within the Appendix to the Plaintiffs' Motion for Summary Judgment (which contains all of the transcripts relied on by both the Plaintiffs and the government). For example, "Pls.' Mot. App. Ex. 3 at 67, Bordeaux Dep. at 1" refers to the deposition of Curtis Bordeaux, and that the referenced testimony can be found on page 1 of the transcript of his deposition, which is also page 67 of the Plaintiffs' Appendix. Where a fact is in dispute, it is noted.

2016). BPAs are responsible for patrolling the some 6,000 miles of international borders between the United States and Canada and the United States and Mexico. Id. In addition, at border crossings, BPAs screen foreign visitors and returning American citizens, as well as imported goods. Id.

To better detect individuals attempting to enter the United States illegally, as well to interdict controlled substances and other contraband, some Border Patrol agents are paired with a trained detection canine. See Canine Program, U.S. Customs and Border Protection, https://www.cbp.gov/border-security/along-us-borders/canine-program (last visited July 25, 2016). Those Border Patrol Agents who are paired with canines perform the same duties as those who are not. Pls.' Mot. App. Ex. 7 at 223, Kraus Dep. at 34 ("I do the same thing [as other BPAs], but I do it with a dog."); id. Ex. 4 at 108, Cuevas Dep. at 23 ("[W]e still perform all the same duties, but in addition, we can utilize our canines as a tool to detect concealed humans [and] narcotics."). In addition, canine handlers receive the same compensation as BPAs who do not work with canines, except that canine handlers are typically paid for an additional eight hours of work per pay period for canine care and maintenance training. Id. Ex. 4 at 108, Cuevas Dep. at 23; id. Ex. 3 at 83, Bordeaux Dep. at 65.

CBP operates an integrated Canine Training Program at centers in Front Royal, Virginia and El Paso, Texas. Canine Program, supra. BPAs who want to work with canines must attend a seven-week program that combines field and classroom training and evaluation at one of these centers. Pls.' Mot. App. Ex. 17 at 1091, Shaw Dep. at 94. Canines, the canine handler agents, and canine instructors receive their training through this program. See Canine Program, supra; see also Pls.' Mot. App. Ex. 17 at 10, 91, 1112–13, Shaw Dep. at 94, 115–16. Upon successful completion of the seven-week course, handlers are certified to work with a canine for one year subject to the requirement that they "attend 16 hours a month of maintenance training under a certified CBP canine instructor" to maintain their certification. Pls.' Mot. App. Ex. 76 at 1999.

BPAs who have already received certification as canine handlers may seek additional certification as canine instructors. See id. Ex. 3 at 71, Bordeaux Dep. at 16–17. Canine instructors remain responsible for the same duties as other BPAs who are canine handlers, but may also take on collateral duties to help other canine handlers maintain their certification; in addition, they are also eligible to be promoted to work as instructors at one of CBP's two training centers. See id. Ex. 9 at 309, Salas Dep. at 19; Ex. 3 at 75, Bordeaux Dep. at 30–31; Ex. 5 at 137, Garcia Dep. at 23–24.

A BPA with canine instructor certification who does not work as instructor at a training center does not get a pay raise, new title, or any other additional compensation for taking on instructor duties. Id. Ex. 3 at 71, Bordeaux Dep. at 16–17. Certification as a canine instructor, however, may help a canine handler advance into a supervisory position in the canine program, which could result in a promotion and pay raise. Id. Ex. 3 at 74, Bordeaux Dep. at 29 (testifying that "the knowledge you would gain from going to instructor school would be invaluable for . . . making that next step in your career"). Without such certification a canine handler may still advance into a supervisory position outside the canine program. See id. Ex. 9 at 314, Salas Dep. at 41. Supervisory positions outside the canine program are compensated on the same basis as

canine supervisory positions. See id. Ex. 4 at 112, Cuevas Dep. at 41 (noting that canine supervisory BPAs are paid the same as non-canine supervisory BPAs).

In order to be certified as a canine instructor, a canine handler must enroll in the Detection Canine Instructor Course (DCIC), the rigorous twelve-week training program that is the focus of this case. Id. at 2000. CBP routinely solicits interest in such enrollment by circulating memoranda to canine handlers through their supervisors. E.g., Pls.' Reply Suppl. App. Ex. 7–9 (Memoranda to Patrol Agent[s] in Charge, from Chief Patrol Agent, El Paso Sector). These memoranda, bearing the subject line "Canine Instructor Positions" or "Solicitation of Canine Instructor Positions" solicit applicants for upcoming canine instructor classes, advising prospective candidates of the details of the application process. They state that "interested agents" who successfully complete the course must be willing to take on additional collateral duties, which may include accepting a detail to a canine training center to provide instructor support or conducting maintenance training for other handlers on a bi-weekly basis. Id.

Canine handlers are not required to participate in the DCIC unless they wish to be certified as canine instructors. See Pls.' Mot. App. Ex. 5 at 139, Garcia Dep. at 30 (testifying that CBP did not require him to attend the DCIC); id. Ex. 17 at 1036, Shaw Dep. at 39 (confirming that BPAs had to "volunteer for the course"). Canine handlers who do not seek or secure canine instructor certification do not suffer any adverse consequences in their current jobs. See id. Ex. 3 at 75, Bordeaux Dep. at 31; id. Ex. 5 at 139, Garcia Dep. at 30; id. Ex. 7 at 227, Kraus Dep. at 53; Def.'s Opp'n to Pls.' Mot. for Summ. J. and Cross-Mot. for Summ. J. (Def.'s Cross-Mot.) Suppl. App. at 2, Shaw Decl. ¶ 5 ("[BPAs] did not suffer any adverse consequences as a result of his or her failure to attend the DCIC."). They may continue to work as handlers without attending the DCIC. Pls.' Mot. App. Ex. 9 at 315–16, Salas Dep. at 45–48; id. Ex. 17 at 1088, 1090, Shaw Dep. at 91, 93; Def.'s Cross-Mot. Suppl. App. at 2, Shaw Decl. ¶ 5 ("[BPAs] who did not attend the DCIC . . . could continue working as [BPAs] (and continue working in the canine program if applicable).).

Canine handlers who are interested in attending the DCIC to be certified as instructors must submit an application and undergo an interview. Pls.' Mot. App. Ex. 3 at 74, Bordeaux Dep. at 27–29; see also id. Ex. 76 at 2002–03 (CBP DCIC "Course Overview" describing the experience, attitude, and physical ability "recommended in handler or instructor candidate selection"); Pls.' Reply Suppl. App. Ex. 7–9 (solicitation memoranda). Selection for the course is a competitive process; many BPAs have been denied spots in the program on the grounds that they had not yet acquired sufficient experience as handlers. Pls.' Mot. App. Ex. 7 at 224, Kraus Dep. at 40–41 ("When I interviewed, roughly 60 people at the station interviewed for the spot."); id. Ex. 9 at 316, Salas Dep. at 46 (explaining that although he applied to attend the DCIC in 2008, he was not selected until 2011).

BPAs who voluntarily apply and are selected to participate in the DCIC but who fail to pass the course are not demoted or disciplined. See id. Ex. 9 at 316, Salas Dep. at 48. Further, unsuccessful participants are permitted to reapply for enrollment in the DCIC. Id. Ex. 5 at 141, Garcia Dep. at 40.

### III. The Detection Canine Instructor Course

As noted above, canine handlers who wished to be certified as instructors were required to attend the DCIC for twelve weeks. Id. Ex. 76 at 2000. The course itself combined fieldwork, hands-on training, and extensive classroom instruction. Id. Students attended this formal training during the entirety of their regular tour of duty. See id. Ex. 4 at 114, Cuevas Dep. at 46–47.

To successfully complete the training, students were required to "meet minimum performance standards in handling and instructional delivery" and "pass four comprehensive exams with a minimum score of 90% on each." Id. Ex. 76 at 2000; see also id. Ex. 17 at 1023, Shaw Dep. at 26. The exams consisted of short answer and essay questions about "selection, training and certification of a canine and a canine handler." Id. Ex. 17 at 1026, Shaw Dep. at 29. Approximately twenty-five percent of the test required verbatim restatement of course material. Id. Ex. 17 at 1028, Shaw Dep. at 31. Therefore, in order to pass each of the four exams, students were required to commit a substantial portion of the material to memory. See id.

No paid working hours were set aside for study time at the DCIC. See id. Ex. 4 at 114, Cuevas Dep. at 47–49. Instead, according to Plaintiffs, students were encouraged—both implicitly and explicitly—to study the course material outside of their normal duty hours during the week and over the weekend. Id. Ex. 17 at 1131, Shaw Dep. at 134. Students often reported to their supervisors that they had studied the material on their own time. Id. Ex. 17 at 1082, Shaw Dep. at 85. Each of the representative BPA Plaintiffs in the case testified that he studied during off-hours while attending the DCIC. See id. Ex. 3 at 72, Bordeaux Dep. at 19; id. Ex. 4 at 116, Cuevas Dep. at 55; id. Ex. 5 at 148, Garcia Dep. at 66; id. Ex. 7 at 235, Kraus Dep. at 84; id. Ex. 9 at 310, Salas Dep. at 25; see also id. Ex. 17 at 1058, Shaw Dep. at 61–63 (government's designated witness testifying that he could not recall any student who did not study off-hours while attending the DCIC). Plaintiffs who studied for the DCIC outside of working hours were not paid for the time they spent studying. See id. Ex. 3 at 72, Bordeaux Dep. at 18.

### IV. This Action

Plaintiffs filed this action for back pay and overtime compensation for time spent studying during non-work hours while attending the DCIC. See Am. Compl. at 2, 10, ECF No. 77. As noted, the BPA plaintiffs contend that the studying constituted "hours of work" under the FLSA, that CBP suffered or permitted them to engage in these hours of work, and that CBP violated the FLSA by failing to compensate them for the time they spent studying. Id. at 4–5, 8.

After a period of discovery, during which the case was reassigned to the undersigned, Plaintiffs filed a motion for summary judgment on liability on December 2, 2015. ECF No. 79.[2]

---

[2] The government originally filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Rules of the Court of Federal Claims (RCFC) arguing that the Court of Federal Claims lacked jurisdiction to consider claims arising under the FLSA. See Def.'s Mot. to Dismiss, ECF No. 17. In the intervening months, the Federal Circuit issued its decision in Abbey v. United States, 745 F.3d 1363 (Fed. Cir. 2014), reaffirming the Court of Federal Claims' subject matter jurisdiction over FLSA claims against the United States. In response to

The government filed its response and cross-motion for summary judgment on January 18, 2016. ECF No. 84. Subsequently, as noted, the claims of the CBPOs were referred for alternative dispute resolution. ECF No. 94. Oral argument was held on July 8, 2016 on the parties' cross-motions for summary judgment as to the claims of the Border Patrol Agents.

## DISCUSSION

### I. Jurisdiction

The Court of Federal Claims has jurisdiction under the Tucker Act to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). The Tucker Act waives the sovereign immunity of the United States to allow a suit for money damages, United States v. Mitchell, 463 U.S. 206, 215 (1983), but it does not confer any substantive rights, United States v. Testan, 424 U.S. 392, 398 (1976). Therefore, a plaintiff seeking to invoke the court's Tucker Act jurisdiction must identify an independent source of a substantive right to money damages from the United States arising out of a contract, statute, regulation, or constitutional provision. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

Claims against the government under the monetary-damages provision of the FLSA, 29 U.S.C. § 216(b), are within this Court's Tucker Act jurisdiction. Abbey v. United States, 745 F.3d at 1369. Accordingly, this Court has jurisdiction over Plaintiffs' FLSA claims in this matter.

### II. Standard for Summary Judgment

The standards for granting summary judgment are well established. Summary judgment may be granted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Rules of the Court of Federal Claims (RCFC) 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. An issue is genuine if it "may reasonably be resolved in favor of either party." Id. at 250.

The moving party bears the burden of establishing the absence of any genuine issue of material fact, and all significant doubts regarding factual issues must be resolved in favor of the party opposing summary judgment. Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." Id. at 1391. Further, the court should act with caution in granting summary judgment and may deny

---

the decision in Abbey, the government made a motion for leave to withdraw its motion to dismiss, ECF No. 52, which the Court granted, ECF No. 53.

summary judgment "where there is reason to believe that the better course would be to proceed to a full trial." Anderson, 477 U.S. at 255.

**III. Merits**

The material facts in this case, as set forth in the Background section of this Opinion, are not in dispute. The issue before the Court is a purely legal one: whether the time that the plaintiff Border Patrol Agents claim that they spent studying while attending the DCIC constitutes "hours of work" for purposes of the FLSA. To decide that question, the Court must first determine whether the study time was "time spent in training" within the meaning of 5 C.F.R. § 551.423(a)(1). If so, then the Court must apply OPM's test for determining whether the time spent in training is compensable under the FLSA, which requires plaintiffs to show that they were "directed to participate in the training" by CBP and that "[t]he purpose of the training [was] to improve the employee's performance of the duties and responsibilities of [their] current position." 5 C.F.R. § 551.423(2)(i)–(ii).

Beginning with the first issue identified above, the Court concludes that the Plaintiffs' after-hours studying and homework constituted "time spent in training outside regular working hours" within the meaning of 5 C.F.R. § 551.423(a)(1). OPM regulations define "training" as a "coordinated program, course, curriculum, subject, system, or routine of instruction or education." 5 C.F.R. § 410.101(c) (2016) (adopting the definition of training set forth at 5 U.S.C. § 4101(4)). In light of the fact that the time that the BPAs spent studying course materials in preparation for their exams was an integral part of their educational experience at the DCIC, it seems to the Court very clear that the time they spent studying was "time spent in training" for purposes of OPM's regulations. See Bull v. United States, 68 Fed. Cl. 212, 256 & n.46 (2005) (holding that "unstructured off-duty training exercises," such as time spent in off-duty weapons practice or studying, are "training" activities and "are therefore appropriately analyzed under [5 C.F.R. § 551.423]"), aff'd, 749 F.3d 1365 (Fed. Cir. 2007).

As noted, because the time Plaintiffs spent studying was "time spent in training," in order to establish their entitlement to overtime pay, the BPAs must show that they were "directed to participate in the training" by CBP and that "[t]he purpose of the training [was] to improve [their] performance of the duties and responsibilities of [their] current position." 5 C.F.R. § 551.423. For the reasons set forth below, neither regulatory criterion has been satisfied in this case.

First, OPM regulations provide that an employee is "directed to participate in the training" when "the training is required by the agency and the employee's performance or continued retention in his or her current position will be adversely affected by nonenrollment in such training." Id. § 551.423(b)(1); see Bull, 68 Fed. Cl. at 257 (requiring an "underlying finding that the [agency] required plaintiffs to participate in [training] and that, if plaintiffs did not participate, their employment would have been adversely affected"). In this case, it is undisputed that Plaintiffs were not required by CBP to attend the DCIC. The undisputed facts further show that non-enrollment in the training did not adversely affect either a canine handler's performance of their current duties or their continued retention. To the contrary, participation in the DCIC was voluntary for canine handlers and was based on a competitive application process. See Pls.' Mot. App. Ex. 5 at 139, Garcia Dep. at 30; id. Ex. 3 at 74, Bordeaux Dep. at 27–29; id. Ex. 7 at 224,

Kraus Dep. at 40–41; id. Ex. 9 at 316, Salas Dep. at 46–48; id. Ex. 17 at 1036, Shaw Dep. at 39 (testifying that BPAs had to "volunteer for the course"). Further, as Plaintiffs' testimony makes plain, BPAs could continue with their canine handling duties whether or not they attended the DCIC. See id. Ex. 5 at 139, Garcia Dep. at 30; id. Ex. 7 at 227, Kraus Dep. at 52–53; id. Ex. 9 at 316, Salas Dep. at 47–48; see also id. Ex. 17 at 1088, 1090, Shaw Dep. at 91, 93; Def.'s Cross-Mot. Suppl. App. at 2, Shaw Decl. ¶ 5.

Plaintiffs argue nonetheless that they were "directed to participate" in the DCIC within the meaning of OPM's regulations because "once BPAs are selected and assigned to attend a DCIC, they are then required to attend and required to pass." See, e.g., Pls.' Reply Suppl. App. Ex. 1 at 3, Bordeaux Decl. ¶ 10; id. Ex. 3 at 10, Kraus Decl. ¶ 6 (stating that "I was compelled to attend DCIC once I was assigned"). They also reference statements in the solicitation memoranda that applicants who are selected "must successfully complete" the course. Id. Ex. 3 at 11, Kraus Decl. ¶ 8; id. Ex. 1 at 2, Bordeaux Decl. ¶ 7. Finally, they also point out that once selected, BPAs received official "orders" advising them as to when and where to report for their training, what to bring with them, and what their travel allowance and per diem would be while attending the DCIC. See id. Ex. 3 at 11, Kraus Decl. ¶ 9.

These arguments are unpersuasive. It is hardly surprising that Plaintiffs were "required to attend" the training program after they voluntarily applied and were competitively selected to participate in it. But the critical points for purposes of applying OPM's regulations are that their participation in the DCIC was voluntary in the first instance and that their failure to apply or enroll would have had no effect on their existing jobs as canine handlers. Pls.' Mot. App. Ex. 7 at 227, Kraus Dep. at 52. Further, statements in the solicitation memoranda that attendees "must successfully complete" the course cannot be read as warnings that failure to pass the course once enrolled would result in adverse consequences in their current jobs as handlers. Thus, while Plaintiffs argue that those who failed the DCIC suffered a "serious career setback" and "a major black mark on [their] record," Pls.' Mot. at 14, it is undisputed that canine handlers who voluntarily attended the DCIC and failed to successfully complete the instructor course continued to work as canine handlers when they returned to the field. See id. App. Ex. 5 at 141, Garcia Dep. at 40. At best then, what Plaintiffs statements suggest, is that failing the course might prevent canine handlers from securing promotion and advancement out of their current positions.

Nor have Plaintiffs satisfied the second criterion set forth in OPM's regulations, mandating that in order to constitute hours of work, "[t]he purpose of the training" must be "to improve the employee's performance of the duties and responsibilities of [their] current position." 5 C.F.R. § 551.423(a)(2)(ii). While there is no dispute that enrollment in the DCIC may have improved canine handlers' performance of their current positions and responsibilities, such improvement was a byproduct of the training, not its "purpose." See id. § 551.423(a)(ii); see also id. § 551.423(b)(2) (distinguishing training "to improve the employee's performance . . . of his or her current position" from "upward mobility training or developmental training to provide an employee the knowledge or skills needed for a subsequent position in the same field"). Thus, it is undisputed that to maintain their certifications as canine handlers, Plaintiffs were not required to attend the DCIC; rather, they were required to undergo "16 hours a month of maintenance training under a certified CBP canine instructor." Id. Ex. 76 at 1999. By contrast, the purpose of the DCIC, as revealed in the solicitation memoranda themselves, was to give

Plaintiffs new skills that they would need to take on additional duties that involve the provision of instruction to other canine handlers. See Pls.' Reply Suppl. App. Ex. 7–9. And ultimately, as Plaintiffs themselves testified, the training served the purpose of assisting their career advancement within CBP's canine program. See Pls.' Mot. App. Ex. 3 at 74, Bordeaux Dep. at 29 (describing the instruction training as "invaluable for . . . making that next step in your career"); id. Ex. 7 at 227, Kraus Dep. 52 (testifying that he "wanted to further [his] career, further [his] knowledge").

In short, the purpose of the DCIC was not to improve the Plaintiffs' performance of their duties and responsibilities as BPAs, or even as canine handlers. Instead it was to provide the BPAs with new skills and knowledge needed to take on additional collateral duties as canine instructors, perhaps leading to promotion within the canine program. For that reason, and because Plaintiffs' participation in the program was voluntary, the time Plaintiffs spent studying outside of regular working hours during their attendance at the DCIC does not constitute "hours of work" within the meaning of 5 C.F.R. § 551.423.[3]

Finally, in their reply brief, Plaintiffs briefly cite as possible alternative bases for their entitlement to overtime pay, OPM's regulations at 1) 5 C.F.R. § 551.423(a)(4) (stating that "[t]ime spent by an employee performing work for the agency during a period of training shall be considered hours of work"); 2) section 551.423(d) (providing that "[t]ime spent attending a lecture, meeting, or conference shall be considered hours of work" where the employee "performs work for the benefit of the agency during such attendance"); and 3) section 610.121(b)(3) (addressing the scheduling of the "administrative workweek"). Pls.' Reply at 7. Plaintiffs' brief references to these regulatory provisions are unavailing.

Thus, section 551.423(a)(4) requires Plaintiffs to show that they performed "work" for CBP during the time that they were in training. In this case, however, Plaintiffs introduced no evidence to support such a claim; instead, they appear to argue that they were performing work at DCIC when they assisted in the training of other handlers and canines under the supervision of a certified instructor. Pls.' Reply at 8–9. But even if those efforts could be considered "work" (a conclusion about which the Court expresses no opinion), it appears that such "work" was performed during regular duty hours for which Plaintiffs were compensated. The gravamen of Plaintiffs' claims is not that they were not compensated for training dogs or other handlers, but that they were not compensated for studying outside of regular duty hours. Id.

[3] In their amended complaint, Plaintiffs introduced a new claim for overtime pay for time spent completing paperwork while enrolled in the DCIC. See Pls.' Reply at 26. But as Plaintiffs themselves acknowledge, "the paperwork itself was a form of study and homework because correctly filling out such paperwork was part of learning to be a Canine Instructor." See id. at 26 n.54. As a result, Plaintiffs' claims for overtime pay resulting from off-duty time spent completing paperwork fail for the same reasons as their claims for overtime pay resulting from off-duty time spent studying generally.

Similarly, section 551.423(d) is not applicable at all because Plaintiffs are not claiming entitlement to compensation for time spent attending a lecture, meeting or conference, but rather for time spent studying. Nor have Plaintiffs explained how their study hours constituted "work performed for the benefit of the agency;" indeed, as explained above, the study time was not "work" at all within the meaning of OPM's regulations. And Plaintiffs' citation of section 610.121(b)(3) is supported by no argument at all. Therefore the Court will not address it.

## CONCLUSION

On the basis of the foregoing, the government's motion for summary judgment is **GRANTED** as to the Border Patrol Agent Plaintiffs' FLSA claims, and the Plaintiffs' motion for summary judgment is **DENIED** as to those claims. The Clerk is directed to enter judgment accordingly as to the individual Plaintiffs identified in the attachment to this Opinion.

The Court's existing stay of the claims of the remaining plaintiffs, including consideration of the parties' cross-motions for summary judgment as to those claims, shall be continued pending completion of the ADR process.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge

| *Almanza et al v. United States* | | |
|---|---|---|
| | **BORDER PATROL PLAINTIFFS** | |
| # | **LAST NAME** | **FIRST NAME** |
| 1 | Abbott | John G. |
| 2 | Akins | William P. |
| 3 | Aldaco, Jr. | Roberto |
| 4 | Amaro, Jr. | Cipriano |
| 5 | Andrade | Eric R. |
| 6 | Andrew Jr. | Edwin L. |
| 7 | Arnold | Donald |
| 8 | Arredondo | Jesus |
| 9 | Arreola | Mario |
| 10 | Avila | Aldo A. |
| 11 | Aviles | Adam |
| 12 | Bacon | Jered |
| 13 | Baird | Adam |
| 14 | Banegas | George F. |
| 15 | Barker | Douglas |
| 16 | Barrera | John |
| 17 | Barrera | Luis |
| 18 | Bauman | Adam |
| 19 | Birmingham | David J. |
| 20 | Bordeaux | Curtis |
| 21 | Bowen | Mark D. |
| 22 | Buchanan | Archie B. |
| 23 | Bumiller | Eric O. |
| 24 | Burch | Wesley |
| 25 | Caballero | Rolando |
| 26 | Calderon, Jr. | Miguel A. |
| 27 | Camarena | Angel M. |
| 28 | Campos | Lucio |
| 29 | Carbajal | Rolando |
| 30 | Cardenas | Francisco |
| 31 | Carlson | Aaron |
| 32 | Carnes | Christina |
| 33 | Carrigan | Sean |
| 34 | Carrillo | Javier |
| 35 | Caruthers | Kevin A. |
| 36 | Castillo | Emily |
| 37 | Cervantes Jr. | David |
| 38 | Chamberlain | Christopher M. |
| 39 | Chavez | Carlos A. |
| 40 | Cisneros | Rudy |
| 41 | Clare | Justin |

| *Almanza et al v. United States* | | |
|---|---|---|
| | BORDER PATROL PLAINTIFFS | |
| # | LAST NAME | FIRST NAME |
| 42 | Collins | Sean |
| 43 | Cooper | Clinton C. |
| 44 | Correa | Kenie A. |
| 45 | Cortez | Pedro |
| 46 | Cortez | Ricardo R. |
| 47 | Cox | Daniel P. |
| 48 | Crumby | Dennis |
| 49 | Cruz | Miguel |
| 50 | Cuevas | Andres |
| 51 | David | Isaac V. |
| 52 | Davila | Javier |
| 53 | De la Torre | Ruben |
| 54 | De Leon, Jr. | Arnold |
| 55 | De Leon | Roger L. |
| 56 | Delgado | Timothy |
| 57 | Dennis | Darryl |
| 58 | Dimolios | Chris C. |
| 59 | Dodson | Douglas |
| 60 | Dominguez | Jose M. |
| 61 | Dudding | Christopher E. |
| 62 | Duprey | Brian E. |
| 63 | Dvorak | Brian S. |
| 64 | Esparza | Alberto D. |
| 65 | Estrada | Eduardo |
| 66 | Farias | Marcos |
| 67 | Figueroa | Nancy |
| 68 | Flores | Eduardo A. |
| 69 | Flores | Esteban |
| 70 | Flores | Wilbert |
| 71 | Gallegos | Celso |
| 72 | Garcia | Israel E. |
| 73 | Garcia, Jr. | Refugio |
| 74 | Garcia | Sergio |
| 75 | Garza | Eugenio |
| 76 | Gill | Christopher M. |
| 77 | Gillette | John R. |
| 78 | Gilmore | David |
| 79 | Gonzales | Adrian |
| 80 | Gonzalez | Delvin |
| 81 | Gonzales | Johnny |
| 82 | Gregg | Michael P. |

| *Almanza et al v. United States* | | |
|---|---|---|
| | BORDER PATROL PLAINTIFFS | |
| # | LAST NAME | FIRST NAME |
| 83 | Gualducci | Gary R. |
| 84 | Gutierrez | Benjamin |
| 85 | Gutierrez | Edgar |
| 86 | Haley | Casey D. |
| 87 | Haley | Eric T |
| 88 | Hall | David A. |
| 89 | Hays | Jeffrey |
| 90 | Hernandez | Abran |
| 91 | Herrera | Raymundo |
| 92 | Hewitt | Victor L. |
| 93 | Hicks | Billy T. |
| 94 | Hinojosa | Armand |
| 95 | Hughes | Jason M. |
| 96 | Jarmon | Mark |
| 97 | Karem | Christopher D. |
| 98 | Kemp | Sherman |
| 99 | Kenyon | Jeremy |
| 100 | Kite | Jeremy A. |
| 101 | Kraus | Christopher |
| 102 | Lalonde | Gregory |
| 103 | Landrum | Jason |
| 104 | Lawler | Robert M. |
| 105 | LeBlanc | Seth |
| 106 | Le Van | Kevin |
| 107 | Limon | Jorge |
| 108 | Loa | Raymon J. |
| 109 | Lopez | Eric |
| 110 | Lopez | Michael |
| 111 | Lopez | Roy I. |
| 112 | Loya | Leonel A. |
| 113 | Lukason | Claudia |
| 114 | Lukason | Robert |
| 115 | Maese | Jesus M. |
| 116 | Maldonado | Isaias |
| 117 | Maldonado | Jorge |
| 118 | Martinez | Joel |
| 119 | Martinez | Jose Luis |
| 120 | McCants | Timothy |
| 121 | McElvene | Daryl K. |
| 122 | McGaffey | Kevin C. |
| 123 | Medrano | Guadalupe |

| *Almanza et al v. United States* | | |
|---|---|---|
| | BORDER PATROL PLAINTIFFS | |
| # | LAST NAME | FIRST NAME |
| 124 | Mejia | Romeo R. |
| 125 | Mendoza | Arturo Daniel |
| 126 | Montoya | Ramiro |
| 127 | Moya | Robert |
| 128 | Myra | Christopher S. |
| 129 | Navarro | Joe F. |
| 130 | Neckel | Derrick |
| 131 | Noziska | Robert J. |
| 132 | Ochoa | Angel G. |
| 133 | Oldums | Adolphus |
| 134 | Ortiz | Daniel |
| 135 | Ortiz | Oscar |
| 136 | Osburn | Reese |
| 137 | Paez | Jorge A. |
| 138 | Paz | Gilberto |
| 139 | Paulk, Sr. | Gregory H. |
| 140 | Pedersen | Jon R. |
| 141 | Phagan | David |
| 142 | Philpot | Patrick |
| 143 | Pompa | Guillermo |
| 144 | Ramirez | Carlos |
| 145 | Ramirez | David E. |
| 146 | Ramirez | Yemel |
| 147 | Ramos | Dan |
| 148 | Raygoza Jr. | Joel |
| 149 | Reid | Justin |
| 150 | Reyes | Pedro A. |
| 151 | Reyes Jr. | Sergio |
| 152 | Riggin | Michael W. |
| 153 | Roddick | Robert K. |
| 154 | Roden | Matthew |
| 155 | Rodriguez | Alonzo |
| 156 | Rodriguez | Lisa M. |
| 157 | Rodriguez | Ricardo |
| 158 | Rodriguez | Roberto |
| 159 | Rodriguez, Jr. | Simon |
| 160 | Rubio | Eric |
| 161 | Runa | Charles M. |
| 162 | Saenz | Joseph M. |
| 163 | Sadberry | Cody J. |
| 164 | Salas | Jared |

| *Almanza et al v. United States* | | |
|---|---|---|
| | **BORDER PATROL PLAINTIFFS** | |
| # | **LAST NAME** | **FIRST NAME** |
| 165 | Salinas, Jr. | Raymundo |
| 166 | Sanchez | Jose |
| 167 | Sandoval | Edgar |
| 168 | Slater | James D. |
| 169 | Slingerland, Jr. | Russell |
| 170 | Solosabal | Matthew A. |
| 171 | Spellane | Ryan |
| 172 | Spiering | John |
| 173 | Spoonamore | Gary L. |
| 174 | Stamey | Ellen L. |
| 175 | Stewart | Christopher |
| 176 | Tafoya | Michael J. |
| 177 | Taylor | Michael J. |
| 178 | Teller | Daniel J. |
| 179 | Tena | Richard L. |
| 180 | Thomas | Clayton R. |
| 181 | Tijerina | Julio C. |
| 182 | Torres | Marco Antonio |
| 183 | Trevino | Jose |
| 184 | Trevino | Oscar A. |
| 185 | Tyler | Karl |
| 186 | Tyler, Jr. | Richard E. |
| 187 | Valdez | Arturo |
| 188 | Valdivia | Julian |
| 189 | Valenzuela | Martin B. |
| 190 | Vander Ploeg | Robert J. |
| 191 | Vasquez | Felipe G. |
| 192 | Vasquez | Miguel A. |
| 193 | Vela Jr. | Oscar |
| 194 | Velasquez, Jr. | Fernando |
| 195 | Vidrio | Griselda L. |
| 196 | Villafuerte | Alfonso |
| 197 | Villegas | Aaron |
| 198 | Violette | Jason |
| 199 | Waasdorp | Randal J. |
| 200 | Warren | Molly |
| 201 | Watt | Daniel |
| 202 | Williams | Ronald |
| 203 | Zepeda | Carlos |