# In the United States Court of Federal Claims

No. 13-130C
(Filed: November 6, 2017)

|  |  |
|---|---|
| MANUEL ALMANZA, et al., AND OTHER SIMILARLY SITUATED PERSONS,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Keywords: Fair Labor Standards Act; Customs Officer Pay Reform Act; Settlement Approval. |

*David L. Kern*, Kern Law Firm PC, El Paso, TX, for Plaintiffs. *Mark Greenwald*, Greenwald & Greenwald, PLLC, San Antonio, TX, and *Robert Gaudet, Jr.*, RJ Gaudet & Associates, El Paso, TX, Of Counsel.

*Albert S. Iarossi*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, for Defendant, with whom were *Steven J. Gillingham*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General.

## OPINION AND ORDER

**KAPLAN, Judge.**

Currently before the Court are Plaintiffs' "Motion to Approve FLSA Settlement, Enforce Stipulation, and Enter Judgment and Order," ECF No. 120, and "Plaintiffs' Motion for Award of Attorneys' Fees Expenses and Costs," ECF No. 113. The government has filed an opposition to both motions. ECF Nos. 117, 123.

For the reasons set forth below, Plaintiffs' motion to approve the parties' FLSA settlement is **GRANTED** and the settlement agreement is **APPROVED**. Plaintiffs' motion for an award of attorneys' fees shall be held in abeyance pending the filing of supplemental briefs, as discussed below.

## BACKGROUND

The original plaintiffs in this case were 290 Customs and Border Protection Officers (CBPOs) and Border Patrol Agents (BPAs) who are now or were formerly employed by U.S. Customs and Border Protection, Department of Homeland Security (CBP). They filed this action

to recover overtime pay for time that they spent studying outside of regular working hours while attending CBP's Detection Canine Instructor Course. See Am. Compl., ECF No. 77.

The CBPOs' claims were based on the Customs Officer Pay Reform Act, 19 U.S.C. § 267 (COPRA), or, in the alternative, the Fair Labor Standards Act (FLSA), as amended, 29 U.S.C. §§ 201–19.[1] On May 24, 2016, the Court referred these claims to alternative dispute resolution at the request of the parties. ECF No. 94. Thereafter, on February 24, 2017, the parties entered into a settlement agreement as to the claims of the CBPOs. Pls.' Mot. to Approve FLSA Settlement (Pls.' Mot. to Approve) Ex. A, ECF No. 120-1.

Under the settlement, Plaintiffs agreed to dismiss their COPRA and FLSA claims with prejudice in exchange for payment by the government of $1,716,000. See id. ¶ 5; see also id. ¶ 14.[2] The agreement reserved to Plaintiffs their rights to submit an application for an award of attorneys' fees, costs, or expenses within sixty days, "pursuant to the Equal Access to Justice Act . . . or any other Act that plaintiffs claim may be applicable." Id. ¶¶ 13–14. The government, in turn, reserved its right to object to any application for fees that Plaintiffs might file. Id. Finally, the parties agreed to stipulate to a dismissal of Plaintiffs' claims with prejudice within twenty-one days of the later of the United States' satisfaction of its obligations to make the payments due under the agreement or a final decision on Plaintiffs' application for attorneys' fees. Id. ¶ 14.

On April 25, 2017, Plaintiffs filed a motion for an award of attorneys' fees, expenses, and costs in the amount of $3,011,788.82. See Pls.' Mot. for Award of Att'y's Fees Expenses & Costs at 28–29, ECF No. 113. As authority for the award, Plaintiffs cited "29 U.S.C. § 216(b) of [the] FLSA as well as the applicable provisions of the [Back Pay Act, 5 U.S.C. § 5596] and COPRA." Id. at 1–2.[3]

The government filed an opposition to Plaintiffs' motion on June 30, 2017. ECF No. 117. In its opposition, the government argues that Plaintiffs are not entitled to any fee award at all. Def.'s Opp'n to Pls.' Am. Mot. for Att'y Fees at 1. It contends first that COPRA does not

---

[1] The Court granted the government's motion for summary judgment as to the BPAs' claims on July 26, 2016. Almanza v. United States, 127 Fed. Cl. 521 (2016).

[2] The agreement provided, among other things, that the government would supply counsel for Plaintiffs with checks for each individual plaintiff that represented an agreed-upon amount of back pay, and that it would pay counsel a lump sum for the remaining amount, which represented the total award to all of the plaintiffs for liquidated damages and incentive fees. Pls.' Mot. to Approve Ex. A ¶¶ 7–8. The lump sum would be deposited into counsel's trust account and was "subject to possible reductions by plaintiffs' counsel for attorneys' fees and cost reimbursements," pursuant to counsel's agreement with Plaintiffs. Id. ¶¶ 5, 8.

[3] Later that same day, Plaintiffs filed an amended motion for attorneys' fees, expenses, and costs "for the purpose of complying with CFC Rule 5.4(2)(A)-(G) as well as to make minor amendments and clarifications to the text of the motion." Pls.' Am. Mot. for Award of Att'y's Fees, Expenses & Costs (Pls.' Am. Mot. for Att'y Fees) at 4, ECF No. 114.

2

authorize an award of attorneys' fees. Id. at 6. In addition, the government argues that under Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598, 604 (2001) and its progeny, Plaintiffs are not "prevailing parties" as required to secure attorneys' fees under the Back Pay Act. Id. at 7–9. Specifically, the government argues that "[t]o qualify as a prevailing party, a fee applicant must identify a judicially-sanctioned action that caused a 'material alteration of the legal relationship of the parties,'" and that this requirement is not met where a litigant "achieves a favorable outcome through the voluntary conduct of the defendant." Id. at 7 (quoting Buckhannon, 532 U.S. at 604). Finally, the government argues that Plaintiffs are not entitled to an award of attorneys' fees under the FLSA because the Court did not issue a judgment under the FLSA.[4] See id. at 5, 8–9.

On July 11, 2017, Plaintiffs filed a "Motion to Approve FLSA Settlement, Enforce Stipulation, and Enter Judgment and Order." ECF No. 120. In their motion, Plaintiffs argue that at an earlier stage in this case, the parties "stipulated" that the Court would issue an order approving any settlement and recognizing its binding effect, and that this "stipulation" represents "the law of the case." See Pls.' Mot. to Approve at 7. Further, Plaintiffs contend that the Court should approve the settlement agreement and issue an order to that effect because such approval is required as a matter of law to make Plaintiffs' agreement to waive their FLSA claims valid and enforceable. Id. at 4.

The government opposes this motion as well. ECF No. 123. According to the government, Plaintiffs' counsel previously argued that it was unnecessary for the Court to approve the settlement agreement. Id. at 2. The government contends further that "Plaintiffs' efforts were successful [in that regard], because the Court explicitly rejected such involvement in an October 2013 order." Id. at 1. The government also notes that the settlement agreement itself does not mention "let alone require, approval or involvement by the Court." Id. "More fundamentally," the government contends, "there is no reason for the Court to approve the parties' Settlement Agreement" because "[t]he governing statute and clear Federal Circuit precedent mandate[] that plaintiffs' backpay claims be reimbursed under [COPRA]" for which approval of a settlement agreement is not required. Id. And in any event, the government notes in passing, the Federal Circuit has never held "that FLSA settlement agreements entered into by the Department of Justice on behalf of the United States are subject to the same approval requirements that similar settlement agreements between private parties may be." Id. at 9 n.6.

## DISCUSSION

### I. The Parties' Prior Positions and the Court's Earlier Rulings

As noted above, Plaintiffs contend that this Court should issue an order that approves the terms of the settlement on the grounds that earlier in this litigation the parties stipulated that the Court would take such action in the event a settlement agreement was reached. The government, for its part, contends that Plaintiffs' motion seeking the Court's approval of the terms of the

---

[4] The government also argues in the alternative that even if Plaintiffs are entitled to some award of fees, the hourly rate Plaintiffs requested for legal services is excessive and unreasonable. Def.'s Opp'n to Pls.' Am. Mot. for Att'y Fees at 9.

3

settlement agreement is inconsistent with legal arguments that counsel referenced during a status conference held in October of 2013. The government further argues that, in any event, Judge Allegra (to whom this case was originally assigned)[5] expressly rejected any proposal that the court be involved in approving a settlement agreement in this action when he struck from the parties' proposed notice to the class (ECF No. 26-1) a sentence stating that "[a]ny settlement in the case is subject to the approval of the Court through the issuance of an order recognizing the settlement." See ECF No. 28 (observing that the sentence was "inaccurate" and striking it from the proposed notice).

The Court finds that the proposed and final notices to the class and the colloquies between the parties and Judge Allegra do not control this Court's disposition of Plaintiffs' motion. Thus, it rejects Plaintiffs' contention that the parties stipulated that they would submit any settlement agreement to the Court for approval. It also finds unpersuasive and irrelevant the government's argument that counsel for Plaintiffs conceded that such approval would not be required or appropriate if a settlement was reached.

The record reveals that after an initial status conference held on August 1, 2013, Judge Allegra directed the parties to file a joint status report setting forth a plan for providing notice of the action to prospective class members and to submit a proposed notice. ECF No. 15. On September 3, 2013, consistent with Judge Allegra's order, the parties filed a joint status report along with a proposed "Notice of Legal Rights to Make a Claim for Unpaid Wages." See Joint Status Report Ex. A, ECF No. 18-1.

Shortly thereafter, Judge Allegra issued an order scheduling another status conference for September 19, 2013. See ECF Nos. 19–20. In that order, Judge Allegra directed the parties to "be prepared to discuss the statements in paragraph seven [of the proposed notice] relating to the effect of the settlement and the court's approval of any settlement." Order, ECF No. 19. The statement to which Judge Allegra referred, the last sentence of the proposed paragraph seven, read as follows: "[a]ny settlement or judgment in the case is subject to the ultimate approval of the Court." See Joint Status Report Ex. A.

At the beginning of the September 19th status conference, Judge Allegra advised the parties that he wanted to make the case "as simple as possible" and was seeking the parties' input on the extent to which the procedures for class actions set forth in Rule 23 of the Rules of the Court of Federal Claims, particularly the requirement of a fairness hearing, should apply to a collective action under the FLSA. Tr. of Telephonic Status Conference at 4 (Sept. 19, 2013), ECF No. 125. He noted that the parties had indicated in their proposed notice that "the effect of joining this lawsuit [is] that any settlement or judgment in the case is subject to the ultimate approval of the Court." Id. at 5. He then expressed his view that "[o]rdinarily . . . a settlement in a case, unless we're talking about a class action with a fairness hearing, wouldn't have that approval. I mean you all could settle whatever you settled." Id.

In response, counsel for Plaintiffs advised Judge Allegra that FLSA collective actions do not require the same kind of approval process as Rule 23 class actions; specifically, counsel for

---

[5] The case was transferred to the undersigned in June 2015. ECF No. 70.


Plaintiffs asserted that there was no requirement for a fairness hearing because FLSA collective actions are opt-in, not opt-out. Id. at 5–7. He further advised Judge Allegra that in his experience "FLSA collective action settlements are pretty routinely approved by courts." Id. at 6–7. Nonetheless, he noted that there was "a trend developing" which permitted exceptions to what he characterized as "the rule[] that you need court approval or DOL approval of an FLSA settlement" in order for the settlement to be valid and enforceable. Id. at 7 (referencing Martin v. Spring Break '83 Prods., L.L.C., 688 F.3d 247 (5th Cir. 2012)).[6] Counsel then stated that in light of this "trend," he would be "comfortable" deleting the last sentence of paragraph seven, but that if the court wished to be involved in the approval of a settlement, then in his experience that would not be a problem either because such approval was "very routinely granted, at least in FLSA collective actions." Id. at 8–9. Judge Allegra responded that while he did not doubt that approval of settlements occurred routinely in FLSA cases, "the procedures for doing a fairness hearing involve more than . . . simply looking at the settlement." Id. at 9. Counsel for Plaintiffs then reiterated his observation that fairness hearings are not required in FLSA collective actions. Id.

Counsel for the government then presented his views, noting that he was unaware of any Justice Department policy that would require a fairness hearing for FLSA claims but that he would be "happy to go back and run that up the flag pole and vet it and be sure." Id. at 11. Judge Allegra agreed that it would be useful to get the government's firm views on the issue. Id. He further directed that after government counsel confirmed the government's position, he should confer with counsel for Plaintiffs to determine how to structure the notice so that it would not "promise a fairness hearing that's not going to happen." Id. at 12. In that regard, Judge Allegra observed that "it may be that the only thing you need to change is that one sentence at the end of paragraph 7, but it would be probably good if you took a look and made sure that that was the case." Id. He then directed the parties to submit a revised proposed notice by October 2, 2013. See id. at 12–13.

Following a brief extension of that deadline, see ECF Nos. 24–25, on October 17, 2013, the parties filed a Notice of Compliance along with a revised proposed "Notice of Legal Rights to Make a Claim for Unpaid Wages," ECF No. 26. In their Notice of Compliance, the parties stated as follows:

> In response to the Court's inquiry at the joint status conference on September 19, 2013, the parties agree that the collective action process under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219, is distinct from that provided for class actions pursuant to Rule 23 of the Rules of the Court of Federal Claims, and that, in the event of a settlement of this action, the Court need not conduct a Rule 23 fairness hearing. However, the parties anticipate that any settlement, should one occur, would proceed by stipulation of judgment, and

---

[6] The night before the conference, counsel apparently had emailed Judge Allegra an excerpt from a paper he had written on the topic of this new "trend." Tr. of Telephonic Status Conference at 5, 7. Judge Allegra indicated during the conference that he had not received the email. See id. at 5. The email is not part of the record in this case.

5

> that the Court would issue an order recognizing the settlement and
> its binding effect upon all members of the collective action.

Notice of Compliance at 1.

Further, the parties revised slightly the wording of the last sentence of paragraph seven of the proposed notice, so that instead of stating that "[a]ny settlement or judgment in the case is subject to the ultimate approval of the Court," it stated that "[a]ny settlement in the case is subject to the approval of the Court through the issuance of an order recognizing the settlement." Notice of Compliance Ex. 1 ¶ 7, ECF No. 26-1.

Judge Allegra, however, was not satisfied with the parties' proposed rewording of the sentence, which would have had him "recognize," as opposed to "approve," any settlement agreement. He noted that "[i]n the court's view, the last sentence of paragraph seven of the proposed notice is inaccurate." Order, ECF No. 28. Judge Allegra therefore directed the parties to strike the sentence entirely, and authorized the parties to then disseminate the notice to potential plaintiffs. Id.

As is readily apparent, neither the Notice of Compliance nor the last sentence in paragraph seven of the notice the parties proposed constituted an enforceable "stipulation" between the parties regarding the procedure that would be followed in the event of a settlement. The parties proposed the language in an attempt to meet Judge Allegra's concern that potential plaintiffs not be promised a fairness hearing and to address his reluctance to agree to approve any settlement that was reached. It appears that the parties also wished to keep open the possibility that Judge Allegra would "recognize" any settlement that might be reached "and its binding effect" (hence the language in the Notice of Compliance regarding what the parties "anticipate[d]" regarding the court's role in the settlement process). But Judge Allegra struck the proposed language stating that any settlement would be approved by the court from the notice to the class. Thus, even if the parties intended to stipulate to the requirement of court approval, Judge Allegra rejected that stipulation.

The Court similarly rejects the government's contention that counsel for Plaintiffs has argued or conceded that judicial approval of a settlement agreement is not required in FLSA cases. Counsel's exposition of the trending case law at the status conference was informal and intended to educate Judge Allegra about how courts have dealt with settlement agreements in FLSA cases. The issue of the enforceability of FLSA settlements that have not been subject to judicial approval was not briefed and no decision was made as to whether and what extent court approval would be necessary for any FLSA settlement agreement to be valid. Indeed, even after the status conference, both parties submitted the Notice of Compliance and the proposed notice to class members which anticipated that the court would review and approve any settlement agreement.

In any event, for the reasons set forth below, the Court is of the view that the Court's review and approval of the settlement agreement is a prerequisite to its enforceability as to Plaintiffs' FLSA claims. In fact, the Court cannot approve the voluntary dismissal of Plaintiffs' claims with prejudice that is contemplated by the agreement unless it reviews and approves the

6

settlement. It is therefore irrelevant what position Plaintiffs' counsel might have taken at a status conference held in the early stages of this case.

## II.   FLSA Claims and the Requirement of Court Approval of Settlement Terms

As noted, Plaintiffs argue that agreements between individual plaintiffs and the government which settle FLSA claims are not valid and enforceable unless they are approved by a court. Therefore, Plaintiffs contend, this Court should review the proposed settlement agreement between the parties and, if it determines that the Agreement is fair and reasonable, approve the same. The Court agrees.

The purpose of the FLSA is to protect workers from substandard wages and oppressive working hours. Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981). Given the inequality in bargaining power between employers and employees, the provisions of the FLSA are not subject to negotiation or bargaining. See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706–07 (1945). As the Supreme Court has held, "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." Barrentine, 450 U.S. at 740 (quoting Brooklyn Sav. Bank, 324 U.S. at 707).

In light of these principles, in Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982), the court of appeals held that "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees." Id. at 1352. "First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. An employee who accepts such a payment supervised by the Secretary thereby waives his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full the back wages." Id. at 1353. The second "route for compromise of FLSA claims," the court of appeals held, "is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations." Id. (footnote omitted). "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." Id.

Other courts of appeals have followed the reasoning in Lynn's Food Stores, Inc., and held that absent either approval by the Secretary of Labor or a court, employees cannot waive their rights under the FLSA. See Copeland v. ABB, Inc., 521 F.3d 1010, 1014 (8th Cir. 2008); Taylor v. Progress Energy, Inc., 493 F.3d 454, 460 (4th Cir. 2007); McConnell v. Applied Performance Techs., Inc., 98 F. App'x 397, 398 (6th Cir. 2004); Walton v. United Consumers Club, Inc., 786 F.2d 303, 306 (7th Cir. 1986); see also Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015) (holding that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect"). The rationale of Lynn's has also been cited in numerous district court decisions and in decisions of the Court of Federal Claims. See, e.g., Hohnke v. United States, 69 Fed. Cl. 170, 179–80 (2005) (citing, among other cases, Lynn's and declining to recognize a settlement agreement between the Department of Veterans Affairs and one of its employees that had not been approved by a court in which the employee purported to waive her entitlement to overtime compensation under the FLSA).

Notwithstanding this authority, the government observes that "[n]either this Court nor the Federal Circuit has ever held that FLSA settlement agreements entered into by the Department of Justice on behalf of the United States are subject to the same approval requirements that similar settlement agreements between private parties may be." Def.'s Opp'n to Pls.' Mot. to Approve at 9 n.6. But the government has not presented the Court with a persuasive reason why the principles underlying Lynn's and related cases, which are based on unequal bargaining power and the public policies underlying the FLSA, are any less applicable to settlement agreements negotiated on behalf of an agency employer by the Justice Department than to settlement agreements negotiated by counsel for private sector employers. In either instance the same disparity in bargaining power exists, as do the same public policies underlying the enforcement of the FLSA.[7]

In that regard, the government's apparent reliance upon the Federal Circuit's decision in O'Connor v. United States, 308 F.3d 1233 (Fed. Cir. 2002) is unavailing. In that case, the court of appeals held that an FLSA settlement agreement between an agency and the plaintiffs' union served as an accord and satisfaction as to the FLSA claims the plaintiffs later sought to pursue in court as individuals. Id. at 1241, 1244. Thus, the Federal Circuit "recognized a third avenue by which a settlement of overtime claims under the FLSA may be enforced-when it is negotiated by a union pursuant to a collective bargaining agreement under the Civil Service Reform Act ('CSRA') grievance procedures." Hohnke, 69 Fed. Cl. at 179. It reasoned that "the policy concerns driving the court's decision in Lynn's Food Stores are not present in the context of a settlement agreement negotiated pursuant to the CSRA and a [collective bargaining agreement]." O'Connor, 308 F.3d at 1244. Specifically, the court of appeals observed that "the CSRA encourages federal employees to participate in labor unions in order to avoid exactly the sort of

---

[7] At the oral argument on Plaintiffs' motion, the government suggested that the Justice Department's involvement in FLSA settlement agreements in the federal sector obviates the need for court approval in the same way that the Secretary of Labor's oversight of the settlement of a private sector employee's FLSA claims acts to ensure the fairness of such an agreement. The Court finds this comparison inapt. The Justice Department acts as counsel for the employer in federal sector FLSA litigation and in negotiating settlements of FLSA claims. The Secretary of Labor, on the other hand, is responsible for enforcing the FLSA and promoting its underlying public purposes. 29 U.S.C. § 216(c) (stating that "[t]he Secretary may bring an action in any court of competent jurisdiction to recover the amount of unpaid minimum wages or overtime compensation and an equal amount as liquidated damages"); Lorillard v. Pons, 434 U.S. 575, 581 (1978) (observing that "in construing the enforcement sections of the FLSA, the courts ha[ve] consistently declared that injunctive relief [i]s not available in suits by private individuals but only in suits by the Secretary" (citations omitted)). Further, the Secretary has statutory authority "to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees." 29 U.S.C. § 216(c) (also providing that "the agreement of any employee to accept such [a Department-of-Labor supervised] payment shall upon payment in full constitute a waiver by such employee" of the employee's right under § 216(b) to bring suit for "such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages"). The Court therefore rejects the government's suggestion that its review of the settlement agreement is unnecessary because of the involvement of the Justice Department.

unjust arrangements experienced by Lynn's Food's employees by attaining an equal bargaining position vis-à-vis their employers." Id.

As is readily apparent, the exception to the requirement of court approval for cases in which the settlement agreement was negotiated by an employee's collective bargaining representative pursuant to the CSRA does not apply in this case. Instead, this case is governed by the general rule requiring approval articulated in both Lynn's and Hohnke.

Finally, there is no merit to the government's argument that "there is no reason for the Court to approve the parties' Settlement Agreement" because "[t]he governing statute and clear Federal Circuit precedent mandates that plaintiffs' backpay claims be reimbursed under [COPRA]" and not the FLSA. Def.'s Opp'n to Pls.' Mot. to Approve at 1. Because this case was not decided on the merits, there is no way of knowing whether—if Plaintiffs prevailed—their entitlement to overtime pay would have been grounded in COPRA or in the FLSA. The key point is that Plaintiffs brought their claims under both COPRA and the FLSA as alternative theories of entitlement to overtime "for hours they allegedly worked after their regular tour of duty hours while attending the DCIC." Pls.' Mot. to Approve Ex. A. ¶ 3.[8] Further, in the settlement agreement, Plaintiffs "release[d], waive[d], and abandon[ed] all claims relating to COPRA or FLSA back-pay claims." Id. ¶ 12 (emphasis supplied). And the settlement agreement itself characterizes a portion of the settlement monies as "liquidated damages," a form of relief that is available under the FLSA, but not COPRA. See id. ¶ 5.

In short, the settlement agreement in this case purports to resolve Plaintiffs' claimed entitlement to back pay and liquidated damages under the FLSA. The Court thus concludes, consistent with the weight of authority, that absent this Court's review and approval there can be no valid waiver or release of Plaintiffs' FLSA claims. Further, even if there was nothing in the FLSA itself that required a court to review and approve a settlement of claims arising under the statute, "[v]arious cases [including Hohnke, Brooklyn Savings Bank, and Lynn's Food Stores] suggest the wisdom" of conducting such review, Order Directing Entry of J., Christofferson v. United States, No. 01-495 (Fed. Cl. Sept. 17, 2010), ECF No. 359, and the government does not deny that the Court has the discretion to do so.

For these reasons, the Court concludes that it is proper for the Court to review the settlement agreement, and, if appropriate, approve it.

### III.   The Reasonableness of the Settlement Agreement

The purpose of a court's review of an FLSA settlement is to ensure that the agreement reasonably and fairly resolves a bona fide dispute over the hours an employee has worked or the pay he is due, and is not simply a waiver of the employee's rights under the FLSA. Hohnke, 69 Fed. Cl. at 175. In this case, the adversarial context in which the settlement agreement was

---

[8] Because overtime entitlement is provided only for officially assigned work under COPRA, plaintiffs who are Customs Officers typically plead COPRA and the FLSA as alternative theories of entitlement in overtime cases. See, e.g., Bull v. United States, 479 F.3d 1365, 1378 (Fed. Cir. 2007).

9

reached establishes the existence of a bona fide dispute as to whether Plaintiffs received pay they were due under the FLSA. Further, the agreement was the product of arms' length negotiation between the parties, each represented by counsel, and with the assistance of the court through its ADR program. Finally, the Court has reviewed the terms of the settlement and finds that it represents a just and reasonable resolution of Plaintiffs' claims for back pay under COPRA and the FLSA. Accordingly, the Court concludes that the settlement agreement warrants approval.

## CONCLUSION

On the basis of the foregoing, Plaintiffs' Motion to Approve the FLSA Settlement (ECF No. 120) is **GRANTED** and the Court hereby **APPROVES** the parties' settlement agreement. The government is directed to file a supplemental brief, no later than **November 20, 2017**, addressing the effect, if any, of the Court's order approving the settlement agreement on the government's arguments: 1) that Plaintiffs are not prevailing parties; and 2) that Plaintiffs have not been awarded any judgment as is required to recover attorneys' fees under the FLSA, 29 U.S.C. § 216(b). Plaintiffs shall file a response to the government's supplemental brief no later than **December 4, 2017**. The briefs shall be limited to the issues specified above and shall not exceed fifteen pages in length.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge