# In the United States Court of Federal Claims

No. 13-130C
(Filed: January 11, 2018)

|  |  |  |
|---|---|---|
| MANUEL ALMANZA, et al., AND OTHER SIMILARLY SITUATED PERSONS, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Keywords: Attorneys' Fees; Prevailing Party; <u>Buckhannon</u>; FLSA; Settlement Agreement; Forum Rule; <u>Avera</u>. |
| Plaintiffs, |  |  |
| v. |  |  |
| THE UNITED STATES OF AMERICA, |  |  |
| Defendant. |  |  |

*David L. Kern*, Kern Law Firm PC, El Paso, TX, for Plaintiffs. *Mark Greenwald*, Greenwald & Greenwald, PLLC, San Antonio, TX, *Robert Gaudet, Jr.*, RJ Gaudet & Associates, LLC, Seattle, WA, and *Robert E. McKnight, Jr.*, Marek, Griffin & Knaupp, Victoria, TX, Of Counsel.

*Albert S. Iarossi*, Trial Attorney, Commercial Litigation Branch, U.S. Department of Justice, Washington, DC, for Defendant, with whom were *Steven J. Gillingham*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Principal Deputy Assistant Attorney General.

**OPINION AND ORDER**

**KAPLAN, Judge.**

Currently before the Court is "Plaintiffs' Amended Motion for Award of Attorneys' Fees, Expenses and Costs." ECF No. 114. The government has filed an opposition to the motion. ECF No 117. For the reasons set forth below, Plaintiffs' motion is **GRANTED-IN-PART**.

**BACKGROUND**

The original plaintiffs in this case were 290 Customs and Border Protection Officers (CBPOs) and Border Patrol Agents (BPAs) who are now or were formerly employed by U.S. Customs and Border Protection, Department of Homeland Security (CBP). They filed this action to recover overtime pay for time that they spent studying outside of regular working hours while attending CBP's Detection Canine Instructor Course. <u>See</u> Am. Compl. ¶¶ 7, 31, ECF No. 77.

The CBPOs' claims were based on the Customs Officer Pay Reform Act, 19 U.S.C. § 267 (COPRA), or, in the alternative, the Fair Labor Standards Act (FLSA), as amended, 29

U.S.C. §§ 201–19.[1] On May 24, 2016, the Court referred the CBPOs' claims to alternative dispute resolution at the request of the parties. ECF No. 94. Thereafter, on February 24, 2017, the parties entered into a settlement agreement as to the claims of the CBPOs. Pls.' Mot. to Approve FLSA Settlement Ex. A, ECF No. 120-1.

Under the settlement, Plaintiffs agreed to dismiss their COPRA and FLSA claims with prejudice in exchange for payment by the government of $1,716,000. See id. ¶ 5; see also id. ¶ 14. The agreement reserved to Plaintiffs their rights to submit an application for an award of attorneys' fees, costs, or expenses within sixty days, "pursuant to the Equal Access to Justice Act . . . or any other Act that plaintiffs claim may be applicable." Id. ¶¶ 13–14. The government, in turn, reserved its right to object to any application for fees that Plaintiffs might file. Id.

On April 25, 2017, Plaintiffs filed a motion for an award of attorneys' fees, expenses, and costs in the amount of $3,011,788.82. See Pls.' Mot. for Award of Att'y's Fees Expenses & Costs at 28–29, ECF No. 113. As authority for the award, Plaintiffs cite "29 U.S.C. § 216(b) of [the] FLSA as well as the applicable provisions of the [Back Pay Act, 5 U.S.C. § 5596] and COPRA." Id. at 1–2.[2]

The government filed an opposition to Plaintiffs' motion on June 30, 2017. ECF No. 117. In its opposition, the government argues that Plaintiffs are not entitled to any fee award at all. Def.'s Opp'n to Pls.' Am. Mot. for Att'y Fees (Def.'s Opp'n) at 1. It contends first that COPRA does not authorize an award of attorneys' fees. Id. at 6. In addition, the government argues that under Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598, 604 (2001) and its progeny, Plaintiffs are not "prevailing parties" as required to secure attorneys' fees under the Back Pay Act. Id. at 7–9. Specifically, the government argues that "[t]o qualify as a prevailing party, a fee applicant must identify a judicially-sanctioned action that caused a 'material alteration of the legal relationship of the parties,'" and that this requirement is not met where a litigant "achieves a favorable outcome through the voluntary conduct of the defendant." Id. at 7 (quoting Buckhannon, 532 U.S. at 604). The government further argues that Plaintiffs are not entitled to an award of attorneys' fees under the FLSA because the Court has not issued a judgment under the FLSA. See id. at 5, 8–9. Finally, the government also argues in the alternative that even if Plaintiffs are entitled to some award of fees, the hourly rate Plaintiffs request for legal services is excessive and unreasonable. Id. at 9.

On July 11, 2017, Plaintiffs filed a "Motion to Approve FLSA Settlement, Enforce Stipulation, and Enter Judgment and Order," ECF No. 120, which the government opposed, ECF No. 123. The Court granted Plaintiffs' motion on November 6, 2017. ECF No. 132. It held that it

---

[1] The Court granted the government's motion for summary judgment as to the BPAs' claims on July 26, 2016. Almanza v. United States, 127 Fed. Cl. 521 (2016).

[2] Later that same day, Plaintiffs filed an amended motion for attorneys' fees, expenses, and costs "for the purpose of complying with CFC Rule 5.4(2)(A)-(G) as well as to make minor amendments and clarifications to the text of the motion." Pls.' Am. Mot. for Award of Att'y's Fees, Expenses & Costs (Pls.' Am. Mot. for Att'y Fees) at 4, ECF No. 114.

2

was appropriate for it to review the settlement agreement because, under the weight of authority, there could be no valid waiver or release of Plaintiffs' FLSA claims absent the Court's approval of the agreement. Almanza v. United States, No. 13-130C, 2017 WL 5118073, at *7 (Fed. Cl. Nov. 6, 2017). Upon review, the Court concluded that the agreement represented "a just and reasonable resolution of Plaintiffs' claims for back pay under COPRA and the FLSA." Id. Accordingly, it issued an order approving the settlement agreement. See id. at *8.

In its Order approving the agreement, the Court requested that the parties file supplemental briefs "addressing the effect, if any, of the Court's order approving the settlement agreement on the government's arguments: 1) that Plaintiffs are not prevailing parties; and 2) that Plaintiffs have not been awarded any judgment as is required to recover attorneys' fees under the FLSA, 29 U.S.C. § 216(b)." Id. Those briefs have now been filed and Plaintiffs' motion for an award of attorneys' fees is, accordingly, ripe for decision.[3]

**DISCUSSION**

**I.    Prevailing Party**

There are two possible statutory bases for an award of attorneys' fees in this case. The first is contained in the Back Pay Act. That Act provides, in pertinent part, that:

> An employee of an agency who, on the basis of a timely appeal or an administrative determination . . . is found by appropriate authority under applicable law . . . to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay. . . of the employee . . . is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect . . . reasonable attorney fees related to the personnel action.

5 U.S.C. § 5596(b)(1) (2012).

Although the Back Pay Act "does not explicitly include a requirement that the party claiming attorney's fees be a prevailing party," it "incorporate[s] by reference the 'standards established under [5 U.S.C. §] 7701(g),' and section 7701(g) includes a prevailing party requirement." Sacco v. United States, 452 F.3d 1305, 1309 (Fed. Cir. 2006) (quoting 5 U.S.C. § 5596(b)(1)(A)(ii)).

The second statutory basis for an award of fees in this case is § 216(b) of the FLSA. It provides that "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b). The Federal Circuit has held that "where an employee prevails on a FLSA claim, the award of attorneys' fees under § 216(b) is mandatory." See Slugocki v. United States, 816 F.2d 1572,

---

[3] In addition, the government filed a motion for leave to file a surreply to Plaintiffs' reply in support of their motion for attorneys' fees. ECF No. 128. That motion is hereby **GRANTED** and the surreply attached to the government's motion is deemed filed.

1579 (Fed. Cir. 1987) (citing Beebe v. United States, 226 Ct. Cl. 308 (1981)); see also Steele v. Leasing Enters., Ltd., 826 F.3d 237, 249 (5th Cir. 2016) (stating that "reasonable attorney's fees are mandatory when a court finds that an employer has violated § 206" (quotation and alteration omitted)); Uphoff v. Elegant Bath, Ltd., 176 F.3d 399, 406 (7th Cir. 1999); Fegley v. Higgins, 19 F.3d 1126, 1134 (6th Cir. 1994). And, at least nine circuits have ruled that—although the FLSA does not include the phrase "prevailing party"—that standard applies to § 216(b). See Rother v. Lupenko, 691 F. App'x 350, 351–52 (9th Cir. 2017); Olivo v. Crawford Chevrolet Inc., 526 F. App'x 852, 854 (10th Cir. 2013); Jackson v. Estelle's Place, LLC, 391 F. App'x 239, 242 (4th Cir. 2010) (per curiam); Saizan v. Delta Concrete Prods. Co., 448 F.3d 795, 799 (5th Cir. 2006); Reimer v. Champion Healthcare Corp., 258 F.3d 720, 725 (8th Cir. 2001); Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 177 (3d Cir. 2001); Nance v. Maxwell Fed. Credit Union, 186 F.3d 1338, 1343 (11th Cir. 1999); Calderon v. Witvoet, 112 F.3d 275, 275 (7th Cir. 1997); United Slate, Tile & Composition Roofers v. G&M Roofing & Sheet Metal Co., 732 F.2d 495, 502 (6th Cir. 1984); see also Rozelle v. United States, No. 04-1712C, 2005 WL 6112659, at *5 (Fed. Cl. July 29, 2005).

The government contends nonetheless that it is not enough for a plaintiff to meet the "prevailing party" standard in an FLSA case to be eligible for an award of attorneys' fees. It asserts that the "plain language" of "[t]he FLSA requires that a plaintiff be awarded a 'judgment' in order to qualify for fees." Def.'s Suppl. Br. Regarding Pls.' Failure to Satisfy Att'y Fee Award Requirements (Def.'s Suppl. Br.) at 3–4, ECF No. 133 (quoting 29 U.S.C. § 216(b)). And by making a "judgment" a prerequisite to the award of attorneys' fees, the government argues, the FLSA requires that the Court rule for Plaintiffs on the merits before it can award fees. See id. at 7–8.

The government's theory—which would preclude any plaintiff from ever recovering attorneys' fees from the government as part of an agreement settling his or her FLSA claim—lacks merit. As noted, the statute provides in pertinent part that "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee." 29 U.S.C. § 216(b). The statute does not specify that the "judgment awarded to the plaintiff or plaintiffs" must be a judgment on the merits and, in fact, courts have frequently awarded attorneys' fees to plaintiffs who have secured settlements of their FLSA claims. See, e.g., Johnson v. Bay Bays Chicken & Waffles, LLC, No. 17-80021-CIV, 2017 WL 5952895, at *2 (S.D. Fla. Nov. 6, 2017), adopted by No. 9:17-cv-80021, 2017 WL 5952894 (S.D. Fla. Nov. 29, 2017); Velasquez v. Digital Page, Inc., 124 F. Supp. 3d 201, 202–05 & n.1 (E.D.N.Y. 2015); Mendez v. Radec Corp., 907 F. Supp. 2d 353, 356 (W.D.N.Y. 2012); In re Tyson Foods, Inc., No. 4:07-md-01854-CDL, 2012 U.S. Dist. LEXIS 7335, at *9–10 (M.D. Ga. Jan. 23, 2012); Creten-Miller v. Westlake Hardware, Inc., No. 08-2351, 2010 WL 11457355, at *2 (D. Kan. July 12, 2010); Goss v. Killian Oaks House of Learning, 248 F. Supp. 2d 1162, 1167 (S.D. Fla. 2003); see also Ortiz v. Chop't Creative Salad Co., 89 F. Supp. 3d 573, 589–90 (S.D.N.Y. 2015).

The threshold issue before the Court then is whether Plaintiffs are prevailing parties for purposes of either the FLSA or the Back Pay Act. Citing Buckhannon, the government contends that Plaintiffs are not prevailing parties under either statute because the case was resolved through a settlement agreement and because the Court has not entered a judgment that either incorporates the terms of the settlement agreement by reference or expressly retains jurisdiction

4

to enforce the agreement. See Def.'s Suppl. Br. at 10–15. The government's argument lacks merit.

In Buckhannon, the Supreme Court rejected the theory that a plaintiff could be awarded fees as a "prevailing party" under a fee-shifting statute where its lawsuit served as the catalyst for a "voluntary change in the defendant's conduct" that "achieves the [lawsuit's] desired result." 532 U.S. at 601, 605–10. The Court reasoned that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." Id. at 605. "Our precedents," the Court observed, "counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees without a corresponding alteration in the legal relationship of the parties." Id. (emphasis in original).

The Court agrees with the government that, under Buckhannon, the settlement agreement alone cannot serve as the basis for finding that Plaintiffs are prevailing parties under either the FLSA or the Back Pay Act. Further, in this case, the settlement agreement provides that once the Court issues its decision on Plaintiffs' request for attorneys' fees, Plaintiffs and the government will stipulate to a dismissal of Plaintiffs' claims with prejudice. Such a stipulation would presumably be submitted pursuant to Rule 41(a)(1)(A)(ii) of the Rules of the Court of Federal Claims. The agreement does not specify that the Court will issue an order that retains jurisdiction to enforce the parties' settlement agreement, and thus the Court does not intend to do so. Accordingly, Plaintiffs cannot claim prevailing party status on the ground that the Court is issuing what is the equivalent of a consent decree in this case.

Nonetheless, "the majority of courts to have considered the issue since Buckhannon [have concluded] that judicial action other than a judgment on the merits or a consent decree can support an award of attorney's fees, so long as such action carries with it sufficient judicial imprimatur." Roberson v. Giuliani, 346 F.3d 75, 81–82 (2d Cir. 2003) (citations omitted). The Court concludes that Plaintiffs have secured a favorable judgment and are prevailing parties here, at least with respect to their FLSA claims, because the Court issued an Order approving the settlement agreement as fair and reasonable, and because it will be directing the entry of a judgment to that effect in conjunction with its disposition of Plaintiffs' motion for attorneys' fees. The Court's earlier decision and the entry of judgment approving the agreement constitute the judicial "imprimatur" described in Buckhannon.

Further, while the Court's approval does not make the settlement enforceable through this Court's contempt power, it does alter the legal relationship between the parties in the unique context of the FLSA. Thus, as discussed in the Court's decision granting Plaintiffs' motion to approve the settlement agreement, the Court's approval validates Plaintiffs' waiver of their FLSA rights and was required to enable either party to enforce the settlement agreement through a breach of contract action. It is only through the Court's approval—secured in this litigation—that the agreement can have legal force and effect. The Court's entry of judgment approving the terms of the settlement agreement is thus sufficient to make Plaintiffs prevailing parties under Buckhannon with respect to their FLSA claims. Wolff v. Royal Am. Mgmt., Inc., 545 F. App'x 791, 795 (11th Cir. 2013) (holding that by finding FLSA settlement reasonable the district court entered a judgment in plaintiff's favor for purposes of § 216(b)); Goss, 248 F. Supp. 2d at 1167 (holding that the "court's approval of a settlement or retention of jurisdiction to enforce a

settlement is a judicially sanctioned change in the legal relationship of the parties" (emphasis supplied)).[4]

## II. Standards for Attorney Fee Awards

"In determining the amount of reasonable attorneys' fees under federal fee-shifting statutes, the Supreme Court has consistently upheld the lodestar calculation as the 'guiding light of [its] fee-shifting jurisprudence.'" Bywaters v. United States, 670 F.3d 1221, 1228–29 (Fed. Cir. 2012) (quoting Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551 (2010)) (alteration in original). Under the "lodestar" approach, the court multiplies the number of hours reasonably expended in the case by a reasonable hourly rate. Id. at 1225–26; see also Blum v. Stenson, 465 U.S. 886, 888 (1984). Hourly rates are determined "according to the prevailing market rates in the relevant community." See Blum, 465 U.S. at 895. The rates should be in line with those of other attorneys in the "relevant community" offering similar services with "reasonably comparable skill, experience and reputation." Id. at 895 n.11

The court of appeals has adopted the "forum rule" to identify the "relevant community" that serves as the basis for determining a reasonable hourly rate. See Avera v. Sec'y of HHS, 515 F.3d 1343, 1348–49 (Fed. Cir. 2008) (observing that "the courts of appeals have uniformly concluded that, in general, forum rates should be used to calculate attorneys' fee awards under other fee-shifting statutes"). Under that rule, the location of the trial court is typically designated as the applicable forum. See Bywaters, 670 F.3d at 1233 (citing Avera, 515 F.3d at 1348–49) (noting that the court should generally calculate the lodestar amount based on rates prevailing in the forum court's geographic location).

The Federal Circuit, however, has recognized a "limited exception" to the forum rule in cases where the bulk of an attorney's work is performed outside of the forum and where there is a "very significant" difference between the forum rate and the local rate. Avera, 515 F.3d at 1349 (citing Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA, 169 F.3d 755, 758–60 (D.C. Cir. 1999) (per curiam)). This limitation on the general rule—known as the "Davis County exception" (in recognition of the case from which it originates)—is designed to prevent windfalls and avoid "the occasional erratic result where the successful petitioner is vastly overcompensated." Id. at 1349 (quoting Davis Cty., 169 F.3d at 758–60); see also Biery v. United States, 818 F.3d 704, 710 (Fed. Cir.) (observing that "[u]ltimately, a fee award must 'be adequate to attract competent counsel,' but must not 'produce windfalls to attorneys'" (quoting

---

[4] Because Plaintiffs are prevailing parties with respect to their FLSA claims, the Court need not and does not address whether they would also be considered prevailing parties with respect to their COPRA claims (for which the Back Pay Act authorizes an award of attorneys' fees). As a practical matter, Plaintiffs' FLSA and COPRA claims involved a common core of facts and related legal theories. Counsel's time was "devoted generally to the litigation as a whole" and it would be difficult, if not impossible, to break down the hours expended for the FLSA and COPRA claims separately. See Hensley v. Eckerhart, 461 U.S. 424, 435 (1983) (where multiple claims are made based on a common core of facts, the action "cannot be viewed as a series of discrete claims," and "[i]nstead the . . . court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation").

Hensley, 461 U.S. at 444 (Brennan, J. concurring in part and dissenting in part))), cert. denied, 137 S. Ct. 389 (Mem.) (2016).

In Avera, the court of appeals ruled that the Davis County exception is applicable to attorney fee requests arising under the Vaccine Act. 515 F.3d at 1349. Here, Plaintiffs argue that the exception does not apply under other fee-shifting statutes. See Pls.' Reply to Def.'s Resp. to Pls.' Mot. for Award of Att'y's Fees, Expenses & Costs (Pls.' Reply) at 15–17, ECF No. 127. But "the Supreme Court has advised that all federal fee-shifting statutes calling for an award of 'reasonable' attorneys' fee[s] should be construed 'uniformly.'" Bywaters, 670 F.3d at 1228 (citing City of Burlington v. Dague, 505 U.S. 557, 562 (1992)). Moreover, the court of appeals cited and applied Avera in Bywaters, a case arising under the attorney fee provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c). See id. at 1224, 1232–34. Additionally, Davis County, the case whose rationale the court of appeals relied upon in Avera, itself involved a fee request under the Clean Air Act, 42 U.S.C. § 7607(f). 169 F.3d at 756. And, the concerns about overcompensating counsel that animated Avera apply regardless of the statutory source of a plaintiff's entitlement to reasonable attorneys' fees. Accordingly, contrary to Plaintiffs' contentions, the exception to the forum rule carved out in Avera is applicable to fee requests under other fee-shifting statutes, including the FLSA.

### III.     Plaintiffs' Request

Plaintiffs have requested an award of $2,983,219.95 in attorneys' fees, as well as $28,568.87 in expenses and costs. See Pls.' Am. Mot. for Att'y Fees at 30–32. They contend that fees should be based on the prevailing market rate in Washington, DC, the forum for this litigation. See id. at 9–11; see also Pls.' Reply at 13. Plaintiffs seek fees at so-called "Laffey Matrix" rates, adjusted upward based on changes to the Legal Services Index (LSI) component of the Consumer Price Index (CPI). Pls.' Am. Mot. for Att'y Fees at 9–11; see also Biery, 818 F.3d at 712–13.[5]

---

[5] The term "Laffey Matrix" is based on the 1983 decision of the District Court for the District of Columbia in Laffey v. Northwest Airlines, Inc., which "set out a matrix of reasonable rates for attorneys in the Washington, D.C. metropolitan area who were engaged in complex federal litigation at that time." Biery, 818 F.3d at 712–13 (citing Laffey, 572 F. Supp. 354, 371–72 (D.D.C. 1983), aff'd in part, rev'd in part, 746 F.2d 4 (D.C. Cir. 1984), overruled by Save Our Cumberland Mountains, Inc. v. Hodel, 857 F.2d 1516 (D.C. Cir. 1988) (en banc)). The courts have applied "two competing approaches" to update the Laffey Matrix rates. Id. at 713. First, the United States Attorney's Office for the District of Columbia maintains a schedule (the "Adjusted Laffey Matrix") that is "based on changes to the cost of living in the Washington D.C. metropolitan area as measured by the Consumer Price Index for All Urban Consumers ("CPI–U")." Id. (citation omitted). "The second approach is to use the 'Kavanaugh Matrix,' advanced by economist Dr. Michael Kavanaugh," which, as noted in the text, updates Laffey Matrix rates based on changes to the LSI component of the CPI. Id. (citations omitted). The Kavanaugh Matrix rates are significantly higher than the Adjusted Laffey Matrix rates.

Plaintiffs claim fees in the amount of $2,024,199.74 for the services of the Kern Law Firm, PC, a solo law practice located in El Paso, Texas, whose principal (David L. Kern) is lead counsel in this case. See Pls.' Am. Mot. for Att'y Fees at 30; see also Decl. of David L. Kern (Kern Decl.) ¶¶ 2, 5, ECF No. 114-1. Mr. Kern has practiced law since 1984 in the field of civil trial litigation and appeals. Kern Decl. ¶ 2. He has been board-certified in Labor and Employment Law by the Texas Board of Legal Specialization since 1993. Id. Mr. Kern states that he has "successfully represented thousands of plaintiffs in wage and hour collective and class actions across the nation for more than 25 years," has also represented defendants in such matters, and has served (and is currently serving) as an expert witness in wage and hour collective action cases. Id. ¶ 3. He also has written extensively regarding wage and hour litigation. Id.

The total fee award sought for services provided by the Kern Law Firm is based on: 1) 150.6 hours claimed by Mr. Kern for services provided between April 26, 2012 and May 31, 2013 at an hourly rate of $826; 2) 1,656.95 hours claimed by Mr. Kern for services provided between June 1, 2013 and May 31, 2017 at an hourly rate of $950; and 3) 1,741.72 hours claimed for the firm's paralegals at a rate $187 per hour. Pls.' Am. Mot. for Att'y Fees at 30; id. Ex. 21, ECF No. 114-21. These hourly rates are based on the Kavanaugh Matrix rates for Washington, DC.[6] See Pls.' Am. Mot. for Att'y Fees at 30.

Plaintiffs also request an award of $571,330 for the services of attorney Mark Greenwald, one of the principal attorneys at the Greenwald Law Firm in San Antonio, Texas. See id. Mr. Greenwald has practiced law since 1985, primarily in the field of civil trial litigation and appeals. Decl. of Mark Louis Greenwald ¶ 2, ECF No. 114-13. He has been board-certified in Labor and Employment Law by the Texas Board of Legal Specialization since 1997. Id. Mr. Greenwald also states that he has "successfully represented thousands of plaintiffs in wage and hour collective and class actions across the nation since 1997." Id. ¶ 3. The amount requested for Mr. Greenwald's services is based on 601.4 hours of work he provided at a claimed rate of $950 per hour, based on the Kavanaugh Matrix. See Pls.' Am. Mot. for Att'y Fees at 30–31.

Finally, Plaintiffs seek an award of $386,442.75 for the services of attorney Robert Gaudet, for 564.15 hours of work at $685 per hour.[7] Id. at 31. Mr. Gaudet is an attorney at RJ Gaudet & Associates LLC, which has office addresses in Seattle, Washington and in El Paso, Texas. Decl. of Robert J. Gaudet, Jr. (Gaudet Decl.) ¶¶ 1, 13, ECF No. 114-17. He has been licensed to practice law since 2003, primarily representing plaintiffs in class action lawsuits. Id.

---

[6] The highest rate set forth in the Kavanaugh Matrix is for attorneys who have practiced law for at least twenty years. See Pls.' Am. Mot. for Att'y Fees Ex. 20, ECF No. 114-20. Plaintiffs have extrapolated from that figure to supply an hourly rate of $950 for attorneys with at least thirty years of experience, like Mr. Kern and Mr. Greenwald. See Kern Decl. ¶ 4.

[7] In their motion, Plaintiffs calculate the amount of fees sought for the services provided by Mr. Gaudet as $386,442.75, but then, without any additional item or explanation, list a total amount immediately below that number of $387,690.21. Pls.' Am. Mot. for Att'y Fees at 31. This number appears to include the costs Plaintiffs seek relating to Mr. Gaudet's work. See id.

¶¶ 1, 9. Mr. Gaudet's experience includes representing plaintiffs in employment discrimination cases as well as racial discrimination cases. Id. ¶ 10.

Plaintiffs contend that the issues raised in this litigation were both complex and time-consuming and that the hours claimed are reasonable. They further argue that both Mr. Kern and Mr. Greenwald "have the requisite skill sets and experience to handle government employee overtime class actions in the CFC at the highest levels of skill and competency." Pls.' Am. Mot. for Att'y Fees at 20. They are, according to Plaintiffs, "highly specialized in the area of employment law and are certified as specialists by the State Bar of Texas Board of Legal Specialization in employment law." Id. at 19–20. Further, "both have participated in and been highly successful at FLSA collective action litigation, a very narrow specialty in the labor and employment law realm," and both "are even more sub[-]specialized in the area of government employee FLSA collective actions," as well as "in representing Customs officers in wage and hour collective actions . . . against the government." Id. at 20. "Likewise," they note, Mr. Gaudet "has considerable class action experience and expertise." Id.

The government responds that the hourly rates Plaintiffs have proposed are unreasonable. Citing a 2015 rate survey conducted by the State Bar of Texas (SBOT), it argues that prevailing hourly rates in the communities in which the bulk of the work in this case was performed are well below $950 (the highest rate demanded by Plaintiffs on the basis of the Kavanaugh Matrix). Def.'s Opp'n at 12. The government argues that given the significant disparity between the forum and local rates, Avera demands that the Court use prevailing rates from San Antonio and/or El Paso (rather than Washington, DC) to determine the fee award due to Plaintiffs. Id. at 13–14.

## IV.    The Lodestar Amount

### A.    Number of Hours

As explained above, under the "lodestar" approach an attorney fee award is determined by multiplying the number of hours reasonably expended in the case by a reasonable hourly rate. In this case, the government does not challenge the reasonableness of the number of hours Plaintiffs' counsel claim were expended in support of the overtime claims made by the CBPOs. Based on the government's failure to object and the Court's review of the time sheets submitted in support of the motion, the Court finds that the number of hours claimed is reasonable and was necessary to the favorable outcome the CBPOs achieved in this case. Further, the Court concludes that counsel have appropriately excluded from their fee petition all hours attributable exclusively to the claims of the BPAs, on which they did not prevail.

### B.    Local or Forum Rate

With respect to the hourly rate payable for the services of Plaintiffs' counsel, it is clear that each of Plaintiffs' attorneys performed the bulk of their services in this case outside of Washington, DC, primarily in their offices in Texas.[8] Therefore, under Avera, the Court must

---

[8] Of the over 1,800 hours claimed for Mr. Kern's services, 26.5 hours were attributable to depositions conducted in Washington in June 2015 and 27.25 hours were attributable to the

9

determine whether there is a substantial difference between the prevailing rates in Washington, DC for attorneys with comparable experience and the rates for such services in El Paso and San Antonio, Texas. See 515 F.3d at 1349. In that regard, as noted above, Plaintiffs claim an hourly rate of $685 for Mr. Gaudet; $950 for Mr. Greenwald; and both $826 and $950 for Mr. Kern based on the Kavanaugh Matrix.

The Court assumes for purposes of determining a reasonable fee in this case that Plaintiffs are correct that the Kavanaugh Matrix is an appropriate measure of prevailing rates in Washington, DC for services comparable to those that counsel provided in this case. See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice, 80 F. Supp. 3d 1, 3 (D.D.C. 2015) (citing Eley v. District of Columbia, 999 F. Supp. 2d 137, 153 (D.D.C. 2013), rev'd on other grounds, 793 F.3d 97 (D.C. Cir. 2015)), aff'd on remand, No. 1:11-cv-00374, 2016 WL 554772 (D.D.C. Feb. 11, 2016); see also Salazar v. District of Columbia, No. 93-452, 2014 WL 12695696, at *1–3 (D.D.C. Jan. 30, 2014).

As noted, however, because the bulk of the work in this case was not performed in Washington, DC, the Court must determine whether there is a very significant difference between the hourly rates in the forum, Washington, DC, as determined under the Kavanaugh Matrix, and the market rates for similar services both in El Paso (where Mr. Kern and Mr. Gaudet maintain offices) and in San Antonio (where Mr. Greenwald's office is located). Specifically, it must determine whether paying fees at forum rates would result in a windfall to Plaintiffs and "vastly overcompensate" counsel.

Unfortunately, Plaintiffs submitted no evidence at all regarding the rates that their counsel ordinarily charge their clients or regarding market rates for similar services in El Paso and San Antonio.[9] Plaintiffs have instead chosen to place all their eggs in the Kavanaugh Matrix

---

mediation that occurred in Washington in June 2016 that ultimately led to the settlement of the CBPOs' claims. Pls.' Am. Mot. for Att'y Fees Ex. 4 at 20, 29, ECF No. 114-4; see also Pls.' Am. Mot. for Att'y Fees Ex. 15 at 8–9, 16, ECF No. 114-15 (of 601.4 total hours billed by Mr. Greenwald, 40 hours claimed for work in Washington related to June 2015 depositions and 13.8 hours claimed for work to prepare for and attend mediation in Washington); Gaudet Decl. Ex. 1 at 6–7 (reflecting that of approximately 564 hours claimed, roughly 47 hours were attributable to time spent in Washington defending depositions in July 2015). Beyond these limited appearances in Washington, and some depositions held in Houston, San Diego, and Atlanta, the vast majority of the hours logged represent work counsel presumably performed in their Texas offices, including research, preparing and responding to written discovery, writing briefs, and conducting conference calls.

[9] Plaintiffs have submitted declarations from Washington, DC-based attorneys Jules Bernstein and David R. Cashdan, in which they opine in favor of the award of fees to Plaintiffs' counsel at Kavanaugh Matrix rates. ECF Nos. 114-9, 114-10. The declarations of Messrs. Bernstein and Cashdan provide no help regarding the question of reasonable rates for counsel's services in Texas. And while two other declarants, Rebecca L. Fisher and Glenn D. Levy, apparently have practices in San Antonio, Texas that are similar to those of Plaintiffs' counsel, they also provide no information on local rates but instead, like Mr. Bernstein and Mr. Cashdan, opine that

basket, leaving it to the Court to conduct its own research on fee awards issued in similar cases in Texas in the federal district courts. That research suggests that providing fees to Plaintiffs at the DC rates they request would vastly overcompensate counsel.

Thus, Martinez v. Refinery Terminal Fire Company, No. 2:11-CV-00295, 2016 WL 4594945 (S.D. Tex. Sept. 2, 2016) involved an award of fees in an FLSA collective action in which plaintiffs recovered some $1.4 million in back pay and liquidated damages. The court awarded fees at a rate of $400 per hour for the services of lead counsel in the case, who were partners in a Corpus Christi law firm. See id. at *8. It approved an hourly rate of $115 for the services of the paralegals plaintiffs employed. Id.

Similarly, in Villegas v. Regions Bank, No. H-11-904, 2013 WL 76719, at *1, *3 (S.D. Tex. Jan. 4, 2013), an individual FLSA action, the court awarded fees at an hourly rate of $450 based on counsel's affidavit, prior case law, and the court's own experience and knowledge of the local market (Houston, Texas). In Rouse v. Target Corporation, another FLSA collective action, the district court awarded fees at $500 per hour for the services of a partner at a small Houston law firm who had over twenty-one years of legal experience and who "specialized in employment litigation and complex multi-party litigation, including national and statewide class actions and collective actions under the FLSA." 181 F. Supp. 3d 379, 383, 385 (S.D. Tex. 2016). It awarded fees for the services of paralegals at $100 per hour. Id. at 391.

In Ramirez v. Lewis Energy Group, L.P., the court found that $350 per hour was a reasonable rate for a partner who had been practicing law for some sixteen years in a small Houston law firm, 70% of whose workload was FLSA cases. 197 F. Supp. 3d 952, 956–57 (S.D. Tex. 2016). The court awarded paralegal fees at $125 per hour. Id. at 957. Finally, in Dobson v. Timeless Restaurants, Inc., No. 3:09-CV-2481-L, 2017 WL 1330164 (N.D. Tex. Apr. 11, 2017), another FLSA case, the court's fee award included fees based on a rate of $400 per hour for the services of a partner in a Dallas area law firm who had been practicing law for over thirty years. Id. at *1–2, *4. The court stated "without hesitation" that the rate that the attorney sought was "lower than what [the court] and its colleagues have awarded to other attorneys in employment cases in the Dallas legal community with ability, experience, and skill similar to that of [the attorney]." Id. at *4.

These cases suggest that—at least in the larger metropolitan areas such as Houston and Dallas—the hourly rate range for experienced wage and hour practitioners during the time period in which counsel performed their services in this case is $400 to $500. Plaintiffs' counsel, however, are based in El Paso and San Antonio. Accordingly, it is reasonable for the Court to consider whether to adjust the rate range to account for differences that might exist in those locations.

The government, as noted above, has submitted a copy of the 2015 Hourly Rate Fact Sheet prepared by SBOT. Notwithstanding Plaintiffs' quibbles with the methodology SBOT

---

Plaintiffs' counsel should receive fees at the Kavanaugh Matrix rates in light of their nationwide wage and hour practice. See ECF Nos. 114-12, 114-16.

employed in conducting the survey upon which the Fact Sheet is based,[10] the Court concludes that the information in the Fact Sheet is probative of the difference between the local rates for attorneys practicing employment law in El Paso and San Antonio as compared to Dallas and Houston. Indeed, federal courts in Texas have routinely cited SBOT's Fact Sheets in determining attorney fee awards. See, e.g., Nat'l Collegiate Student Loan Tr. 2006-3 v. Richards, No. 3:16-CV-001936-M, 2017 WL 3017231, at *5 (N.D. Tex. June 14, 2017) (observing that SBOT's Hourly Rate Fact Sheet has been considered by federal courts within Texas in awarding fees), report and recommendation adopted, No. 3:16-CV-001936-M, 2017 WL 3016843 (N.D. Tex. July 14, 2017); Rouse, 181 F. Supp. 3d at 385 (taking judicial notice of Fact Sheet); Ramirez, 197 F. Supp. 3d at 957 (citing 2013 State Bar survey); Thermotek, Inc. v. Orthoflex, Inc., Nos. 3:11-CV-870-D, 3:10-CV-2618-D, 2016 WL 6330429, at *8 & n.14 (N.D. Tex. Oct. 27, 2016) (considering Fact Sheet as a basis for determining a reasonable hourly rate); Hoffman v. L & M Arts, No. 3:10-CV-0953-D, 2015 WL 3999171, at *2 n.4 (N.D. Tex. July 1, 2015) (same); Fin. Cas. & Sur., Inc., v. Parker, No. H-14-0360, 2015 WL 6684552, at *5 & n.5 (S.D. Tex. Nov. 2, 2015) (taking judicial notice of Fact Sheet); Jiwani v. United Cellular, Inc., No. 3:13-CV-4243-M-BK, 2014 WL 4805781, at *5 (N.D. Tex. Sept. 29, 2014) (same); Am. Zurich Ins. Co. v. Jasso, No. MO-12-CV-007, 2013 WL 11301116, at *3 (W.D. Tex. Nov. 1, 2013) (citing Fact Sheet as evidence of reasonable hourly rate), aff'd, 598 F. App'x 239 (5th Cir. 2015) (per curiam); DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Cornette Invs., LLC, No. SA:13-CV-468-XR, 2013 WL 4854392, at *4 (W.D. Tex. Sept. 11, 2013) (taking judicial notice of Fact Sheet).

The 2015 Fact Sheet indicates that the median rates in San Antonio for practitioners of employment law are approximately 10% lower than those of practitioners in Houston and Dallas. Def.'s Opp'n Ex. A at 8. Further, the Fact Sheet reflects that median rates for attorneys in San Antonio who have practiced law for at least twenty-five years are the same as for those in Houston, but about 15% lower than for those in Dallas. Id. at 12. The Fact Sheet also shows that median rates for employment lawyers in El Paso are approximately 28% lower than rates in Houston and Dallas.[11] Id. at 10. The median rates for practitioners with over twenty-five years of

---

[10] Plaintiffs submitted a critique of SBOT's methodology authored by Dr. N. Shirlene Pearson, who holds a PhD in statistics from Southern Methodist University. See Pls.' Reply at 5–6; see also id. Ex. A, ECF No. 127-1. The critique was apparently commissioned by the Texas Employment Lawyers Association to address the Association's concern about the Texas judiciary's reliance upon the rates set forth in the Hourly Fact Sheet when determining fee awards. See Pls.' Reply Ex. A. But the survey SBOT performed was never intended to meet the highest standards of the statistical profession; its purpose was "to obtain information on hourly rates charged in 2015 by Texas attorneys" and that it has done. Def.'s Opp'n Ex. A at ii. In this case, the Fact Sheet is all that the Court has to roughly compare rates in Houston and Dallas to rates in San Antonio and El Paso because Plaintiffs did not submit any evidence of their own regarding local rates. The Court therefore rejects Plaintiffs' arguments that the Fact Sheet should be given no credence.

[11] The Fact Sheet shows median hourly rates of $258 and $205 for attorneys practicing labor-employment law in San Antonio and El Paso, respectively, as compared to $285 and $280 per hour in Houston and Dallas, respectively. Def.'s Opp'n Ex. A at 10.

experience in El Paso are approximately 8% lower than the median rates for those in Houston, and about 21% lower than for those in Dallas. Id. at 12.

The information in the Fact Sheet suggests that the rate ranges for highly experienced FLSA practitioners in both San Antonio and El Paso are lower than the $400 to $500 range suggested by federal district court cases that primarily involved the larger metropolitan areas in Texas. Accordingly, the Court finds that the appropriate range for experienced FLSA counsel in Texas outside of the larger metropolitan areas is $360 to $450 per hour (10% lower than the $400 to $500 range for Houston and Dallas).

Given the expertise of Mr. Kern and Mr. Greenwald in federal sector wage and hour cases and their nationwide practice, and in consideration of other similar cases and the SBOT Fact Sheet, the Court concludes that a reasonable local rate for each of their services would be at the upper end of the range set forth above, approximately $450 per hour. As to Mr. Gaudet, his credentials are impressive, as is his experience, but his experience is less extensive than that of either Mr. Kern or Mr. Greenwald. Accordingly, the Court finds that the appropriate rate for Mr. Gaudet's services is $380 per hour. It further finds that a reasonable hourly rate for the paralegal services claimed is $115 per hour, consistent with the cases from the federal district courts in Texas described above.

As is readily apparent, the disparity between the local rates for the services of Mr. Kern, Mr. Greenwald, and Mr. Gaudet, and the Kavanaugh Matrix rates they claim is substantial—i.e., the rates Plaintiffs request for Mr. Gaudet are nearly twice the local rate, while the rates Plaintiffs request for Mr. Kern and Mr. Greenwald are more than twice the local rate.[12] An award of fees at the forum rate would provide a windfall that would overcompensate counsel for their work in this case. Therefore, attorneys' fees shall be calculated based on the local rates set forth above.

### C. **Plaintiffs' Request for an Upward Adjustment of the Lodestar Calculation**

The Court rejects Plaintiffs' arguments that an upward adjustment to the lodestar amount is warranted based on additional factors referenced in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974), overruled in part by Blanchard v. Bergeron, 489 U.S. 87, 90 (1989). These include, among others, the facts that counsel handled Plaintiffs' claims on a contingency basis; that the case was allegedly a complex one which required unusual skill to handle; that counsel achieved excellent results; and that counsel was precluded from taking on other employment because of the demands of this case.

---

[12] In Davis County, the DC rate sought was approximately 70% higher than local rates. 169 F.3d at 757. "In Avera, the requested D.C. rate of $598 per hour was nearly three times the local rate of $200—199% greater." Garrison v. Sec'y of HHS, 128 Fed. Cl. 99, 108 (2016) (quotation omitted) (citing Avera, 515 F.3d at 1350). "And in Masias v. Sec'y of HHS, 634 F.3d 1283, 1286 (Fed. Cir. 2011), the Federal Circuit affirmed an award based on local rates for Cheyenne, Wyoming, of $220 per hour in 2008, where the forum rate would have been $350 per hour, a 59% difference." Id. (footnote omitted).

There is a "strong presumption" that the lodestar figure represents a "reasonable" attorneys' fee. Dague, 505 U.S. at 562 (quoting Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986)). "[A]djustments to the lodestar figure," therefore, "'are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts.'" Bywaters, 670 F.3d at 1229 (quoting Del. Valley, 478 U.S. at 565). Further, "an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation." Id. (quoting Perdue, 559 U.S. at 553).

None of the additional considerations Plaintiffs cite justify an upward adjustment of the lodestar figure. Even assuming that this case could be considered unusually complex, the complexity of a case as well as the quality of representation (or the specialized experience of counsel) are factors that are subsumed in the lodestar calculation. See Applegate v. United States, 52 Fed. Cl. 751, 763 (2002) (citing Blum, 465 U.S. at 899). Further, the Supreme Court has stated that consideration of the "'results obtained' ordinarily is subsumed within the lodestar amount and should not be an independent basis for increasing the fee amount." Id. (quoting Blum, 465 U.S. at 900). In addition, courts may not enhance the lodestar to reflect the contingent nature of the fee arrangement between plaintiffs and counsel. Id. (citing Dague, 505 U.S. at 562). And, the fact that counsel may have had to turn away other work to provide services in this case does not seem to the Court to be a basis for adjusting the lodestar amount upward, at least not where the foregone work was not significantly more lucrative than the work for which fees are being sought.

### D. Fee Award

Based on the foregoing, Plaintiffs are entitled to a total award of attorneys' fees in the amount of $1,498,703, broken down as follows:

For the services of David L. Kern: 1,807.55 hours x $450/hour = $813,398.

For the services of Mark Greenwald: 601.4 hours x $450/hour = $270,630.

For the services of Robert Gaudet: 564.15 hours x $380/hour = $214,377.

Paralegal services: 1,741.72 hours x $115/hour = $200,298.

### E. Expenses

Plaintiffs have also requested an award of $22,540.36 in expenses. The government does not deny that the expenses identified are those that would customarily be charged to a client. See Oliveira v. United States, 827 F.2d 735, 744 (Fed. Cir. 1987) (under Equal Access to Justice Act, court may award prevailing plaintiff "reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court, which expenses are those customarily charged to the client where the case is tried"). A review of those expenses indicates that they are not unreasonable. Accordingly, the Court concludes that Plaintiffs shall be awarded $22,540.36 in expenses.

## CONCLUSION

Based on the foregoing, Plaintiffs' Amended Motion for an Award of Attorney Fees, Expenses and Costs is **GRANTED-IN-PART**. Pursuant to Rule 54(b), there being no just reason for delay, the Clerk is directed to enter judgment for Plaintiffs approving the parties' Settlement Agreement, consistent with its Opinion and Order of November 6, 2017, and awarding Plaintiffs $1,498,703 in attorneys' fees and $22,540.36 in expenses. Plaintiffs are also awarded their costs.

In accordance with paragraph fourteen of the parties' Settlement Agreement, the parties shall file a stipulation of dismissal of Plaintiffs' claims with prejudice within twenty-one days of the date of this Order.

**IT IS SO ORDERED.**

                                              s/ Elaine D. Kaplan
                                              ELAINE D. KAPLAN
                                              Judge