# In the United States Court of Federal Claims
No. 13-130C
(Filed: February 16, 2018)

|  |  |
|---|---|
| MANUEL ALMANZA, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) | Keywords: RCFC 24; Motion to Intervene; Attorneys' Fees. |

*David L. Kern*, Kern Law Firm PC, El Paso, TX, for Plaintiffs. *Mark Greenwald*, Greenwald & Greenwald, PLLC, San Antonio, TX, Of Counsel.

*Albert S. Iarossi*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Steven J. Gillingham*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General, for Defendant.

*Robert J. Gaudet, Jr.*, RJ Gaudet & Associates, LLC, Seattle, WA, for movant Robert J. Gaudet, Jr.

**OPINION AND ORDER**

**KAPLAN, Judge.**

Currently before the Court is a motion to intervene filed by Robert J. Gaudet, Jr., an attorney who was retained by Plaintiffs' counsel of record (David Kern) to provide legal services in connection with this now nearly-resolved litigation. Pursuant to their agreement, in the event that Plaintiffs prevailed, Mr. Gaudet would receive payment for his services equal to the amount of fees awarded by the Court for those services. This motion arises out of a dispute between Mr. Gaudet and Mr. Kern regarding the legal strategy Plaintiffs should employ to secure the correction of what Mr. Gaudet considers errors in this Court's resolution of Plaintiffs' initial application for attorney fees.

Plaintiffs submitted an initial application for attorneys' fees on April 25, 2017, which this Court granted-in-part in an Opinion and Order issued on January 11, 2018. In his motion to intervene, Mr. Gaudet claims that there are factual errors in the Court's Opinion and Order on Plaintiffs' motion for attorneys' fees. In addition, he argues that the Court used the wrong legal market to determine the prevailing hourly rate for his services. He advises the Court that Mr. Kern has declined his request that Plaintiffs file a motion for reconsideration seeking correction

of these alleged errors. Thus, he has filed the present motion to intervene on his own behalf so that—notwithstanding Plaintiffs' objections—he can file such a motion himself.

For the reasons set forth below, the Court finds that Mr. Gaudet lacks "an interest relating to the property or transaction that is the subject of the action" within the meaning of Rule 24(a) of the Rules of the Court of Federal Claims (RCFC), and that, in any event, his interests are adequately represented without his intervention. In addition, the Court declines to exercise its discretion to grant Mr. Gaudet permission to intervene under RCFC 24(b). Accordingly, Mr. Gaudet's motion to intervene is **DENIED**.

## BACKGROUND

**I.     Prior Proceedings**

In a complaint filed in February 2013, Plaintiffs, who are or were Customs and Border Protection officers, alleged that the government failed to pay them overtime wages pursuant to the Fair Labor Standards Act (FLSA) and/or the Customs Officer Pay Reform Act (COPRA). See Almanza v. United States (Almanza I), No. 13-130C, 2017 WL 5118073, at *1 (Fed. Cl. Nov. 6, 2017). The parties ultimately settled the customs officers' claims in February 2017. Id. Under the settlement, the government agreed to pay Plaintiffs $1.716 million in exchange for dismissal of their COPRA and FLSA claims with prejudice. Id. Additionally, the parties agreed that Plaintiffs could file an application for an award of attorneys' fees and costs with the Court and that the government could oppose the same. Id.

In April 2017, Plaintiffs filed such an application. Id. at *2. In it, Plaintiffs requested, among other things, an award of fees based on the services of the putative intervenor, Robert Gaudet. Almanza v. United States (Almanza II), No. 13-130C, 2018 WL 360354, at *1 (Fed. Cl. Jan. 11, 2018). The fee application was supported by declarations and time sheets prepared by each of the three attorneys who worked on the case, including Mr. Gaudet.

Mr. Gaudet apparently began performing legal services for Plaintiffs pursuant to a verbal agreement with Mr. Kern, which was memorialized in an email exchange of February 24, 2015. Decl. of Robert J. Gaudet, Jr. in Supp. of Mot. to Intervene (Second Gaudet Decl.) Ex. 2 at 32–34, ECF No. 141-1.[1] The emails reflect their understanding that Mr. Kern would assign discrete tasks or projects for Mr. Gaudet to perform in connection with the litigation. See id. at 32 (observing that "[i]t is also understood that you will work only on projects I have assigned to you and will not expand the scope of your work without clearing that with me in advance"). If Plaintiffs ultimately prevailed in the litigation, Mr. Kern would submit Mr. Gaudet's hours to the Court as part of a fee application "based on the Laffey matrix hourly rate that appli[ed] to [him], as a lawyer, times the reasonable number of hours of work performed" and Mr. Gaudet would "receive any payment of fees awarded by the Court on the basis of [his] hours." Id. at 33. Alternatively, Mr. Gaudet would receive "a pro rata share of any fees received in any settlement, e.g., as a contingency fee, which will be calculated as a proportion based on [Mr. Gaudet's]

---

[1] Citations to the exhibits attached to Mr. Gaudet's second declaration are made to the ECF pagination.

lodestar (i.e., hours worked multiplied by reasonable hourly rate reflected in Laffey matrix) in relation to the lodestar of any other lawyers in the case." Id.

Consistent with this arrangement, in their initial application for fees Plaintiffs sought compensation for 564.15 hours worked by Mr. Gaudet at a rate of $685 per hour. Pls.' Am. Mot. for Award of Att'ys' Fees, Expenses & Costs at 31, ECF No. 114. The hours claimed were based on Mr. Gaudet's time sheets, and the rate was derived from the Adjusted Laffey Matrix, which Plaintiffs argued represented the prevailing market rate in the forum for the case, Washington, DC. Decl. of Robert J. Gaudet, Jr. (First Gaudet Decl.) ¶¶ 25–26, ECF No. 114-17.[2]

On January 11, 2018, the Court granted Plaintiffs' attorney fee motion in part. While the Court approved as reasonable all of the hours claimed by Plaintiffs, it found that under Avera v. Secretary of Health and Human Services, 515 F.3d 1343 (Fed. Cir. 2008), it would be improper to use the forum rate to determine Plaintiffs' entitlement to attorneys' fees because: 1) Plaintiffs' attorneys performed the bulk of their services in the case outside of Washington, DC; and 2) there was a significant disparity between the Adjusted Laffey Matrix rates and the prevailing rates in El Paso and San Antonio, Texas, where counsel practiced law. See Almanza II, 2018 WL 360354, at *7–9. It thus awarded attorneys' fees for Mr. Gaudet's services at a rate of $380 per hour based on his experience and the prevailing rates in El Paso, for a total award of $214,377. See id. at *11. Pursuant to the Court's order, on January 12, 2018, the Clerk entered partial judgment under RCFC 54(b) for the amount of attorneys' fees and expenses awarded. ECF No. 138.

On January 18, 2018, Plaintiffs filed a supplemental motion for attorneys' fees for services provided during the time period after their initial fee application. ECF No. 140. Plaintiffs requested supplemental fees at the hourly rates awarded by the Court in its previous decision, except with respect to Mr. Gaudet. See id. at 2–4. Plaintiffs stated:

> Given the ruling of the Court . . . applying local attorney fee rates, and the fact that Gaudet is listed at the top of the Court's Order with a Seattle location, RJG maintains that he is entitled to a local rate of $600 per hour for the work he performed in this matter and he seeks a supplemental fee award from the Court of $220 an hour (i.e., the difference between the $380/hour he was awarded and $600/hour) for his attorney time through April 25, 2017.

Id. at 3.

---

[2] The term Adjusted Laffey Matrix refers to the matrix of "reasonable rates for attorneys in the Washington, D.C. metropolitan area . . . engaged in complex federal litigation" as set forth in Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354 (D.D.C. 1983), aff'd in part, rev'd in part, 746 F.2d 4 (D.C. Cir. 1984), overruled by Save Our Cumberland Mountains, Inc. v. Hodel, 857 F.2d 1516 (D.C. Cir. 1988) (en banc), adjusted based on changes to the Legal Services Index component of the Consumer Price Index. See Almanza II, 2018 WL 360354, at *5 & n.5.

Alternatively, Plaintiffs stated, "RJG maintains that because there is not a significant difference between $600/hour and the Laffey rate he claims of $717/hour . . . he is entitled to fees at the Laffey rate."[3] Id. at 4 n.4. Plaintiffs also requested that any award of attorneys' fees based on Mr. Gaudet's services rendered after Plaintiffs' initial fee application should be calculated at a rate of $600 per hour. See id. at 4.

## II. Mr. Gaudet's Motion to Intervene

The following week, on January 24, 2018, Mr. Gaudet filed the present motion to intervene pursuant to RCFC 24(a)(2) and (b). ECF No. 141. He claims what he characterizes as a "property" interest in this case relating to "attorney's fees to which he is contractually entitled." Id. at 1. Mr. Gaudet argues that the Court made mistakes of fact with respect to where he performed his services in this case and that the portion of the fee award attributable to his work should be revised to reflect "the proper local rate of $600 or the forum rate of $717." Id. at 1. Mr. Gaudet asserts that his interests will be impaired if he is not permitted to intervene because Mr. Kern has declined to file a motion for reconsideration of the Court's Opinion and Order on Plaintiffs' initial motion for attorneys' fees. Id.

## DISCUSSION

### I. Intervention as a Matter of Right

RCFC 24(a) states in pertinent part that:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

RCFC 24(a). The court of appeals has noted that the requirements of Rule 24(a) are to be construed in favor of intervention. Am. Mar. Transp., Inc. v. United States, 870 F.2d 1559, 1561 (Fed. Cir. 1989). Nonetheless, the court has also cautioned that "[i]ntervention is proper only to protect those interests which are "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." Id. (quoting United States v. Am. Tel. & Tel. Co., 642 F.2d 1285, 1292 (D.C. Cir. 1980)) (emphasis in

---

[3] In their reply brief in support of their initial motion for attorneys' fees, Plaintiffs asserted that a new Adjusted Laffey Matrix had just been issued, and that the rate applicable to Mr. Gaudet under that revised matrix was $717 per hour, as compared to the $685 per hour they had requested in their opening brief and supporting documents. See Pls.' Reply to Def.'s Resp. to Pls.' Mot. for Award of Att'ys' Fees, Expenses & Costs at 18–19 n.20, ECF No. 127.

original).[4] Moreover, the interest to be protected must be "one which the substantive law recognizes as belonging to or being owned by the applicant." Id. at 1562 (quoting New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 464 (5th Cir. 1984) (en banc)) (emphasis in original); see also Donaldson v. United States, 400 U.S. 517, 542 (1971) (describing the interest as "a significantly protectable interest"); Nisus Corp. v. Perma-Chink Sys., Inc., 497 F.3d 1316, 1322 (Fed. Cir. 2007) (to intervene a party must have a "substantial legal interest in the underlying litigation"). Accordingly, an indirect and/or contingent economic interest in the proceedings is insufficient to establish a right to intervene under Rule 24. See Am. Mar. Transp., Inc., 870 F.2d at 1562.

The Court finds that Mr. Gaudet's motion to intervene is timely as it was filed almost immediately in the wake of the refusal of Plaintiffs' counsel to file a motion for reconsideration—the act which Mr. Gaudet claims jeopardizes his protected interests. It concludes, however, that Mr. Gaudet lacks an interest which relates to the property or transaction that is the subject of this litigation. Moreover, and in any event, the interests Mr. Gaudet asserts are adequately represented by Plaintiffs.

### A.     The Nature of Mr. Gaudet's Interests

First, Mr. Gaudet's interest in recovering his fees does not constitute an interest in the "property or transaction that is the subject of the action" within the meaning of RCFC 24(a)(2). Thus, the transaction that is the subject of this action is Plaintiffs' performance of hours of work for which they allegedly did not receive the compensation required by law. There is no question that Mr. Gaudet's claim for fees is not grounded in that transaction. See Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 175–77 (2d Cir. 2001) (observing that in a contract dispute case the interest of discharged counsel in his fee "seemingly is not the subject of the underlying action").

Further, while the Federal Circuit has not ruled regarding whether or under what circumstances attorneys may intervene in an underlying action to protect their right to recover their fees, Mr. Gaudet's request does not fall within the rationale of the few cases in which courts have indicated such intervention might be appropriate. In Gilbert v. Johnson, 601 F.2d 761, 767 (5th Cir. 1979), for example, the Court of Appeals for the Fifth Circuit ruled that a plaintiff's former attorney had the right to intervene in the underlying litigation to protect his interest in fees covering the services he had already rendered to the plaintiff. It so ruled because under the applicable state law the putative intervenor/attorney had a lien on the plaintiff's cause of action for the legal services for which the plaintiff had contracted. Id. The attorney's interest would therefore be determined by the "direct" effect of the judgment.[5]

---

[4] Interpretations of the analogous Federal Rules of Civil Procedure "inform[] the Court's analysis" when interpreting the Rules of the Court of Federal Claims. Zoltek Corp. v. United States, 71 Fed. Cl. 160, 167 (2006); see also Am. Mar. Transp., Inc., 870 F.2d at 1560 & n.4.

[5] In Gilbert, the Fifth Circuit cited and relied upon its earlier holding in Gaines v. Dixie Carriers, Inc., 434 F.2d 52 (5th Cir. 1970) (per curiam). See 601 F.2d at 767. In that case, the court of appeals reversed the district court's denial of the motion of plaintiff's former counsel to

5

Similarly, in Butler, the Court of Appeals for the Second Circuit observed in dicta that the interest of the plaintiff's former law firm in securing its fee could arguably serve as a basis for intervention in the underlying action where the law firm had a charging lien against the plaintiff's cause of action under state law, for the applicable state law treated such a lien as an equitable interest in the cause of action itself. 250 F.3d at 178. In those circumstances, the court noted, the firm's interest in its fees could "constitute an interest in the underlying action itself." Id. It also noted, again in dicta, that "a client who enlists the services of counsel on a standard . . . contingency fee arrangement equitably assigns a proportionate share of the cause of action to that counsel," and this too could "at least arguably [be] an equitable interest in the underlying cause of action." Id.[6]

The circumstances here are materially different from those presented in Gilbert and posited in Butler. Mr. Gaudet has no enforceable right to recover any fees from Plaintiffs because he has no agreement with Plaintiffs regarding the payment of his fee; his agreement is with Mr. Kern. In fact, while the retainer agreement between Plaintiffs and their counsel (the Kern Law Firm) explicitly states that the firm "reserves the right to assign other lawyers to work on this matter," it specifies that such work will be "at no additional fee" to Plaintiffs. Second Gaudet Decl. Ex. 3 at 36.

Put another way, Mr. Gaudet's interest in receiving his fees will not be determined by the "direct legal operation and effect of the judgment" in this case. See Am. Mar. Transp., Inc., 870 F.2d at 1561 (internal quotation omitted) (emphasis in original). His compensation will instead

---

intervene to protect its interest in collecting its fee. See Gaines, 434 F.2d at 54. The court of appeals' determination is couched in conclusory language; with no explanation, the court asserted that it was "clear that the appellant law firm here claimed an interest in the subject of the action . . . and is so situated that the final disposition of the action may as a practical matter impair or impede its ability to protect that interest." Id. The Court notes that the soundness of the ruling in Gaines has been questioned by at least one Fifth Circuit panel. See Keith v. St. George Packing Co., 806 F.2d 525, 526 (5th Cir. 1986) (observing that "Gaines may not represent the most persuasive use of Fed. R. Civ. P. 24," but it nevertheless "binds [the panel] as the law of this Circuit until modified en banc"); see also Gilbert, 601 F.2d at 767 (Rubin, J., concurring) (observing that "[w]ere the matter open for consideration, I would deny lawyers employed on a contingent fee the right to intervene in order to safeguard their fees, at least when they can protect their interest in some other way").

[6] Notwithstanding this dicta, the Second Circuit was skeptical about the "public policy repercussions" of recognizing a former counsel's right to intervene to protect his fee, to which the Court refers below in the text. See Butler, 250 F.3d at 178. Ultimately, it declined to decide "whether the financial stake of discharged counsel in its former client's action is the type of interest contemplated by Rule 24(a)." Id. at 179. Instead, it affirmed the district court's denial under another of the requirements of Rule 24(a), concluding that the putative intervenor's interests in that case were aligned with those of the plaintiff and therefore would be adequately protected without intervention. Id. at 179–81.

be determined by the agreement between himself and Mr. Kern and only indirectly by this Court's attorney fee determination.

The Court is unpersuaded by Mr. Gaudet's reliance upon Cherokee Nation of Oklahoma v. United States, 69 Fed. Cl. 148 (2005), for a contrary conclusion. In that case, the plaintiff's suit concerning the alleged misuse and mismanagement of tribal resources by the federal government was resolved through legislation. Id. at 150. That legislation provided compensation to a number of Native American tribes and stated that "[a]t the time the funds are paid to the Indian Nations, from funds authorized to be appropriated [by the Act], the Secretary [of the Interior] shall pay to the Indian Nations' attorneys those fees provided for in the individual tribal attorney fee contracts as approved by the respective Indian Nations." Id. (quoting Indian Financing Amendments Act of 2002, Pub. L. No. 107-331, § 607, 116 Stat. 2834 (2002)) (second and third alterations in original). Based on the legislation, and upon the plaintiff's authorization, the Secretary of the Interior paid the plaintiff's former counsel approximately $151,000 out of the appropriated funds. Id. at 151. The firm claimed, however, that it was entitled to receive the entire $2 million that Congress had appropriated for legal fees. Id.

The law firm moved to intervene in the suit to "protect its contractual right to attorney's fees." Id. at 151–52. The court found that although the subject of the action had originally been the Cherokee Nation's claims of mismanagement, once that claim was resolved by legislation, the legislation itself became the subject of the action. Id. at 155–56. It further found that the putative intervenor's claim for attorneys' fees was directly predicated on the legislation, and therefore that the firm was "claim[ing] an interest relating to the property or transaction that is the subject of the action." Id. at 156.

Of course, this Court is not bound by the decisions of other judges on the Court of Federal Claims. But in any event, Cherokee Nation is readily distinguishable for several reasons. Thus, in Cherokee Nation, unlike this case, former counsel had a contractual relationship with the plaintiff. Further, the legislation that the court found had become the subject of the action incorporated by reference counsel's contractual right to be paid by plaintiff. And finally, the court found it significant that unless the former law firm was permitted to intervene, the firm would likely have no forum to press its contractual claims for attorneys' fees against the Cherokee Nation, given principles of sovereign immunity.

Finally, the Court finds it significant that the statutory fee-shifting provisions applicable here do not bestow upon Mr. Gaudet a direct legal interest in the property or transaction that is the subject of this action. See Pls.' Counsel Robert J. Gaudet, Jr[.]'s Mot. to Intervene (Mot. to Intervene) at 11–12, ECF No. 141. To the contrary, the right to seek fees under statutory fee-shifting provisions belongs to the prevailing plaintiffs, not their counsel. See Willis v. GAO, 448 F.3d 1341, 1345–46 (Fed. Cir. 2006) (citing Evans v. Jeff D., 475 U.S. 717, 729–32 (1986)). Indeed, in Willis, the court of appeals held that an attorney lacked standing in his own right to pursue a larger fee award under an analogous fee-shifting provision, 5 U.S.C. § 7701(g)(1). Id. at 1349. It concluded that counsel did not have a legally-protected interest independent of his client to seek attorneys' fees. Id. at 1345. For similar reasons, the Court concludes that Mr. Gaudet does not possess an interest that is sufficiently direct and legally protectable to supply him with a right to intervene in the proceedings for purposes of increasing his fee recovery.

7

B.      **Practical Considerations and Adequacy of Representation**

In any event, even if Mr. Gaudet had "an interest relating to the property or transaction that is the subject of this action," to intervene as of right under RCFC 24(a) he must still demonstrate that: 1) "disposing of the action" could, "as a practical matter impair or impede" his ability to protect that interest; and 2) the existing parties may not adequately represent his interest.

The Court concludes that the first criterion, related to whether the disposition of this action will, as a practical matter, impair Mr. Gaudet's ability to protect his interests, has arguably been met. Thus, "[t]he practical impairment test is flexible, and its application depends on a pragmatic analysis of the circumstances of a given case . . . ." 6 James Wm. Moore et al., Moore's Federal Practice – Civil § 24.03(3)(a) (2017). Here, Mr. Gaudet's agreement with Mr. Kern ties his compensation to whatever fee amount this Court approves. Other than perhaps an argument based on the duty of good faith and fair dealing, Mr. Gaudet appears to lack any contract claim that would vindicate his purported interest in securing the payment of fees at the higher rate he seeks. Mr. Gaudet's ability to protect his interest therefore does stand to be impaired or impeded as a practical matter by the Court's final disposition of Plaintiffs' attorney fee application.

Nonetheless, the Court finds that Mr. Gaudet's interests are adequately represented by Plaintiffs. In fact, Mr. Gaudet's agreement with Mr. Kern contemplated that Mr. Kern would represent Mr. Gaudet's interests; under it, Mr. Kern was responsible for filing and pursuing the fee application.

In evaluating the adequacy of representation, the court examines three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns, 695 F.3d 1310, 1316 (Fed. Cir. 2012) (quoting Citizens for Balanced Use v. Mont. Wilderness Ass'n, 647 F.3d 893, 898 (9th Cir. 2011)).

In this case, it bears noting that Mr. Gaudet and Plaintiffs share the same ultimate objective—to maximize Plaintiffs' fee recovery. Further, the history of this litigation reveals that Plaintiffs have consistently advanced Mr. Gaudet's interests in receiving a maximum fee award and that, in fact, he has personally had significant input into the fee application process. See First Gaudet Decl. Ex. 1 at 16 (recording tasks performed in connection with initial application). Indeed, through his declaration and in assisting counsel of record in preparing the fee application, Mr. Gaudet has had ample opportunity to bring to the Court's attention whatever information he believed relevant to its determination of the appropriate hourly rate for his services.

Further, Plaintiffs have now taken additional action to protect Mr. Gaudet's alleged interests. Specifically, they have now argued in their supplemental fee application that the Court made material factual errors when it set the applicable rate for Mr. Gaudet's services. See Pls.' Suppl. Appl. for Reasonable Att'ys' Fees & Costs at 3–4. The Court understands that Mr. Gaudet

would prefer that Plaintiffs press this point in a motion for reconsideration. See Mot. to Intervene at 1. But the fact that Plaintiffs have chosen a different strategy to vindicate Mr. Gaudet's alleged interests does not rebut the presumption of adequate representation. "If disagreement with an existing party over trial strategy qualified as inadequate representation, the requirement of Rule 24 would have no meaning." Butler, 250 F.3d at 181 (citing United States v. Yonkers Bd. of Educ., 902 F.2d 213, 218 (2d Cir. 1990)).[7] In short, Plaintiffs have and continue to adequately represent Mr. Gaudet's interests. For that reason, and because the Court has concluded that the interest he claims does not relate to the property or transaction that is the subject matter of this litigation, his motion to intervene pursuant to RCFC 24(a)(2) must be denied.

**II.     RCFC 24(b)**

Mr. Gaudet's failure to establish a right to intervene under RCFC 24(a) is not the end of the matter. RCFC 24(b) gives the Court discretion to allow Mr. Gaudet to intervene in the case if it finds that he "has a claim or defense that shares with the main action a common question of law or fact." RCFC 24(b)(1)(B). It provides, however, that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." RCFC 24(b)(3).

Mr. Gaudet's claim does share a common question of law or fact with the main action because the compensation he will receive for his work in this matter is contractually subject to this Court's determination of the appropriate attorney fee award. Nonetheless, the Court shares the Second Circuit's concerns about the negative repercussions of permitting counsel in Mr. Gaudet's position to intervene in a case to protect his or her fee. As the Second Circuit observed in Butler, permitting an attorney to intervene to protect his fees risks the possibility that the intervening counsel "might advance arguments either not raised, or even in conflict with those already made" by the plaintiff's own counsel, therefore "unintentionally undermining" the plaintiff's litigation strategy. 250 F.3d at 179. Indeed, as is clear from his motion, Mr. Gaudet seeks to employ a strategy that Plaintiffs' chosen counsel have rejected—filing a motion for reconsideration of this Court's attorney fee decision.

Further, if Mr. Gaudet's motion to intervene was granted, then he would be in a position to impede the settlement of any outstanding issues in the case, even over Plaintiffs' objections, thereby "impugning the historical privilege of clients to decide who will represent them." Id. And Mr. Gaudet's intervention also poses the risk of further appeals should the Court not grant reconsideration of the amount of fees awarded based on his work. This would work to the

---

[7] Mr. Gaudet also argues that his interest is being impaired and not adequately represented because Mr. Kern apparently submitted an older declaration on Mr. Gaudet's behalf in support of Plaintiffs' supplemental fee request. See Mot. to Intervene at 17. But on January 26, 2018, and apparently in response to the concerns Mr. Gaudet has raised, Plaintiffs filed a "replacement declaration of Robert J. Gaudet, Jr.," which reflects updated time records. See ECF No. 142; see also Pls.' Suppl. Appl. for Reasonable Att'ys' Fees & Costs at 3 n.3 ("RJG also reserves the right to file an additional supplemental declaration to support his claims . . . .").

prejudice of Plaintiffs, as it would potentially further delay the distribution of the remainder of their recovery.

As the Supreme Court has noted, "[a] request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). Here, the proceedings related to Plaintiffs' application for fees have already consumed an inordinate amount of the parties' time, as well as the Court's. Indeed, the Court has spent more time addressing disputes springing from the parties' failure to resolve attorney fee issues during mediation than it did on the merits of Plaintiffs' claims. Denying Mr. Gaudet's motion to intervene will thus serve to forestall the potential for still more litigation on the fees issues.

## CONCLUSION

For the reasons set forth above, Mr. Gaudet's motion to intervene is **DENIED.**

**IT IS SO ORDERED.**

                                                          s/ Elaine D. Kaplan
                                                          ELAINE D. KAPLAN
                                                          Judge