# In the United States Court of Federal Claims

No. 13-130C

(Filed: April 9, 2018)

|  |  |
|---|---|
| MANUEL ALMANZA, et al., ) | Keywords: Attorneys' Fees; Lodestar; Avera; Davis County Exception; FLSA; Reasonable and Necessary Expenses. |
| Plaintiffs, ) | |
| v. ) | |
| THE UNITED STATES OF AMERICA, ) | |
| Defendant. ) | |

*David L. Kern*, Kern Law Firm PC, El Paso, TX, for Plaintiffs. *Mark Greenwald*, Greenwald & Greenwald, PLLC, San Antonio, TX, *Robert J. Gaudet, Jr.*, RJ Gaudet & Associates, LLC, Seattle, WA, *Robert E. McKnight, Jr.*, Marek, Griffin & Knaupp, Victoria, TX, Of Counsel.

*Albert S. Iarossi*, Trial Attorney, Commercial Litigation Branch, U.S. Department of Justice, Washington, DC, with whom were *Steven J. Gillingham*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General, for Defendant.

**OPINION AND ORDER**

**KAPLAN, Judge.**

      In this case, Customs and Border Protection Officers and Border Patrol Agents filed suit against the federal government seeking unpaid overtime wages under the Fair Labor Standards Act (FLSA) and the Customs Officer Pay Reform Act. The Court entered summary judgment in the government's favor as to the Border Patrol Agents' claims, but the parties entered mediation with respect to the claims of the Customs and Border Protection Officers. More than a year ago, the parties settled those claims; the government agreed to make a payment to Plaintiffs in exchange for which Plaintiffs would dismiss their claims.

      Unfortunately, the agreement did not resolve issues related to the recovery of attorneys' fees. Plaintiffs thus reserved their right to seek an award of such fees from the Court. Accordingly, Plaintiffs filed a motion for attorneys' fees, expenses, and costs in April 2017. The adjudication of the fee application was complicated, however, by the fact that there was no judgment or other form of judicial imprimatur upon which Plaintiffs could rely to establish that they were "prevailing parties" under the reasoning of Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598 (2001). As a result, the proceedings were tied up over the next few months as Plaintiffs sought this Court's approval of the settlement agreement (which the government opposed) and the parties locked horns over

whether such approval would dispose of the government's Buckhannon-based objections to the Court's authority to award Plaintiffs any fees at all.

The Court ultimately awarded Plaintiffs attorneys' fees and expenses in an opinion and order issued January 11, 2018. Plaintiffs have now filed a supplemental motion for fees and expenses for services counsel have provided since the filing of their initial application. These include fees for work done in connection with their request that the Court approve the settlement agreement, their reply to the government's objection to their initial fee petition, and certain services that they characterize as attributable to the administration of the settlement agreement.

The motion has been fully briefed and is ripe for decision. For the reasons set forth below, Plaintiffs' motion is **GRANTED-IN-PART** and **DENIED-IN-PART** and Plaintiffs are awarded $213,114.25 in attorneys' fees and $3,179.05 in expenses and costs.

## BACKGROUND

The Court has set out the background of this case in its numerous prior decisions. Almanza v. United States (Almanza IV), No. 13-130C, 2018 WL 915071 (Fed. Cl. Feb 16, 2018); Almanza v. United States (Almanza III), 135 Fed. Cl. 645 (2018); Almanza v. United States (Almanza II), 135 Fed. Cl. 113 (2017); Almanza v. United States (Almanza I), 127 Fed. Cl. 521 (2016). It therefore will presume familiarity with the facts of this case and will only set forth a brief procedural background leading up to the instant motion.

On February 28, 2017, the parties reported to the Court in a joint status report that, after participating in mediation under the court's Alternative Dispute Resolution program, they had executed a settlement agreement disposing of all remaining claims in the case, other than Plaintiffs' entitlement to an award of attorneys' fees. Jt. Status R. at 1, ECF No. 112. Thereafter, on April 25, 2017, and in accordance with the terms of the parties' settlement agreement, Plaintiffs filed a motion for attorneys' fees, expenses, and costs. ECF No. 113; see also ECF No. 114 (amended motion).

In its response to Plaintiffs' motion, the government contended that Plaintiffs were not entitled to any fees at all because—having not secured any judgment in the case—they failed to meet the prevailing party standard espoused by the Supreme Court in Buckhannon. Def.'s Opp'n to Pls.' Am. Mot. for Award of Att'ys' Fees, Expenses, & Costs at 7–9, ECF No. 117. Apparently motivated by a desire to address the government's Buckhannon-based objection, Plaintiffs then moved for approval of the parties' settlement agreement on July 11, 2017. ECF No. 120. After separate briefing and oral argument on that motion, the Court granted the same and approved the parties' settlement agreement on November 6, 2017. Almanza II, 135 Fed. Cl. at 121. The parties then filed supplemental briefs concerning whether the approval of the settlement agreement resolved the government's Buckhannon-based objection to Plaintiffs' request for attorneys' fees. The Court ultimately ruled that it did, and then granted-in-part and

denied-in-part Plaintiffs' motion. It awarded Plaintiffs $1,498,703 in fees and $22,540.36 in expenses. Almanza III, 135 Fed. Cl. at 656–57.[1]

Shortly afterwards, Plaintiffs filed the pending supplemental motion for attorneys' fees, expenses, and costs covering the period from April 25, 2017 through its filing on January 18, 2018. Pls.' Suppl. Appl. for Reasonable Att'ys' Fees & Costs (Pls.' Suppl. Appl.), ECF No. 140. In it, Plaintiffs seek additional fees for the services of David L. Kern, Plaintiffs' attorney of record, Mark L. Greenwald, and Robert J. Gaudet. Id. at 1–4. They also seek an award of fees for the services provided by another attorney, Robert E. McKnight. Id. at 4.

Plaintiffs adopt the hourly rate approved by the Court in its prior decision with respect to the services of Mr. Kern and Mr. Greenwald, but challenge the hourly rate that the Court approved for the services Mr. Gaudet provided.[2] Id. at 2–4. They also seek an award of fees for the services of Mr. McKnight at a rate of $350 per hour, which they contend is "consistent with the Order and Judgment of the Court." Id. at 4. Plaintiffs thus seek an additional award of attorneys' fees as follows:

---

[1] In the Court's order, it directed that judgment be entered pursuant to Rule 54(b) of the Rules of the Court of Federal Claims as to the award of attorneys' fees and expenses. Almanza III, 135 Fed. Cl. at 657. The Clerk's Office did so on January 12, 2018. ECF No. 138. On March 12, 2018, the government filed a notice of appeal of the Court's decision. ECF No. 152. Additionally, on March 9, 2018, Plaintiffs filed a notice of appeal with respect to the Court's summary judgment opinion from 2016 as to the claims of the Border Patrol Agents, on which judgment was not entered until March 13, 2018. See ECF No. 150; see also ECF No. 155 (judgment). On April 5, 2018, they filed another notice of appeal following the entry of judgment. ECF No. 159.

[2] Mr. Gaudet attempted to intervene on his own behalf to seek reconsideration of the Court's determination of a reasonable hourly rate for his services in its first attorney fee opinion, but the Court denied the motion to intervene on February 16, 2018. See Almanza IV, 2018 WL 915071, at *1.

3

| Attorney/Paralegal | Asserted Hourly Rate | Number of Hours | Total |
|---|---|---|---|
| David L. Kern | $450 | 413.65 | $186,142.50 |
| Kern Law Firm Paralegals | $115 | 82.2 | $9,453 |
| Mark L. Greenwald | $450 | 181.8 | $81,810 |
| Robert J. Gaudet | $600 | 564.15 at $220/hour and 130.15 hours at $600/hour[3] | $202,203 |
| Robert E. McKnight | $350 | 14.7 | $5,145 |

Id. at 2–4; see also Pls.' Reply to Def.'s Opp'n to Pls.' Suppl. Appl. for Reasonable Att'ys' Fees & Costs (Pls.' Reply) Ex. 3 ¶¶ 20, 45, ECF No. 157-3. Additionally, Plaintiffs claim $3,765.27 in supplemental expenses and costs. Pls.' Suppl. Appl. at 2.

**DISCUSSION**

**I.     Standards**

As noted in the Court's previous opinion on attorneys' fees, "[i]n determining the amount of reasonable attorneys' fees under federal fee-shifting statutes, the Supreme Court has consistently upheld the lodestar calculation as the 'guiding light of [its] fee-shifting jurisprudence.'" Bywaters v. United States, 670 F.3d 1221, 1228–29 (Fed. Cir. 2012) (quoting Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551 (2010)) (second alteration in original). Under the "lodestar" approach, the court multiplies the number of hours reasonably expended in the case by a reasonable hourly rate. Id. at 1225–26; see also Blum v. Stenson, 465 U.S. 886, 888 (1984). Hourly rates are determined "according to the prevailing market rates in the relevant community." See Blum, 465 U.S. at 895. The rates should be in line with those of other attorneys in the "relevant community" offering similar services with "reasonably comparable skill, experience and reputation." Id. at 895 n.11. As to hours expended, those that are "excessive,

---

[3] In its first attorney fee decision, the Court awarded Plaintiffs fees for Mr. Gaudet's services at a rate of $380 per hour. Almanza III, 135 Fed. Cl. at 655. In their current motion, Plaintiffs argue that because the Court chose to use the local attorney fee rate rather than the forum rate, Mr. Gaudet should be compensated at $600 per hour, based on California or Seattle rates. See Pls.' Suppl. Appl. at 3–4. Alternatively, they argue that Mr. Gaudet should be compensated at the applicable Adjusted Laffey Matrix rate because there is "not a significant difference" between the Laffey rate and the Seattle or California rate. Id. at 4 n.4. Plaintiffs thus seek an increase in the Court's initial award based on the difference between the rate the Court used and what Plaintiffs contend is Mr. Gaudet's proper rate. They also seek fees for his work since April 2017 at one of these higher rates.

redundant, or otherwise unnecessary" will not be compensated. See Hensley v. Eckerhart, 461 U.S. 424, 434, 437 (1983). The fee applicant bears the burden of establishing the reasonableness of the hourly rate and that the number of hours expended was reasonable. Id.

## II. Reasonable Hourly Rates

In the Court's prior attorney fee opinion, it determined the amount of fees to be awarded for the services of Mr. Kern, Mr. Greenwald, and Mr. Gaudet by applying the lodestar approach. Almanza III, 135 Fed. Cl. at 652–56. With respect to hourly rates, the Court held that the Davis County exception to the forum rule applied. See id. at 653–56; see also Avera ex rel. Avera v. Sec'y of HHS, 515 F.3d 1343, 1349 (2008). The Court therefore applied the prevailing market rates for El Paso, Texas in calculating the fees due for Mr. Kern and Mr. Gaudet's services, and prevailing market rates for San Antonio, Texas for Mr. Greenwald's work. Almanza III, 135 Fed. Cl. at 655–56. It concluded that $450 per hour was a reasonable hourly rate for the services of both Mr. Greenwald and Mr. Kern, that $115 per hour was a reasonable hourly rate for paralegal services, and that $380 per hour was a reasonable hourly rate for Mr. Gaudet. Id.

In their supplemental application, Plaintiffs use the hourly rates this Court approved as to the services supplied by Mr. Kern and Mr. Greenwald and as to Mr. Kern's paralegals. They also seek a rate for Mr. McKnight that the Court agrees is consistent with what the Court found reasonable in its initial decision.[4] Plaintiffs take issue, however, with the hourly rate the Court used in calculating a reasonable fee for Mr. Gaudet's work. Plaintiffs argue that the appropriate local rate for Mr. Gaudet's services is $600 per hour based on fee awards that Mr. Gaudet received in a case on which he worked in the Central District of California and in another case in Superior Court in King County, Washington. See Pls.' Suppl. Appl. at 3; see also id. Ex. 3 ¶¶ 2–4, ECF No. 140-3; Apr. 21, 2017 Decl. of Robert J. Gaudet, Jr. ¶¶ 26–28, ECF No. 114-17.

The request that a higher local rate be used for Mr. Gaudet's services is apparently based on Mr. Gaudet's assertion that the Court was incorrect to presume that all three of Plaintiffs' counsel performed the majority of the work in this case out of their Texas offices. According to Mr. Gaudet's newest declaration, he actually resided in Albany, California and maintained an office in Berkeley from approximately August 2015 through September 2016. Pls.' Suppl. Appl. Ex. 3 ¶ 2. He asserts that "[n]early half the time in [his] time sheets occurred during this period." Id. He also observes that throughout the course of the litigation in this case he maintained an office address in Seattle, Washington. Id.

---

[4] Plaintiffs seek a rate of $350 per hour for the services of Mr. McKnight. Pls.' Suppl. Appl. at 4. Mr. McKnight has been a practicing attorney for approximately twenty-five years, having been admitted to the Louisiana Bar in 1993 and the Texas Bar in 2005. Id. Ex. 4 ¶ 2, ECF No. 140-4. Mr. McKnight has engaged in employment litigation at the federal and state level for most of those twenty-five years. See id. ¶¶ 3–6. More recently, he has focused upon assisting other attorneys in recovering fees and costs. Id. ¶ 6. As the Court previously noted, case law supports a range of $360–$450 per hour for experienced FLSA attorneys in Texas outside of the major metropolitan areas. Almanza III, 135 Fed. Cl. at 655. Therefore, Plaintiffs' request of $350 per hour for Mr. McKnight's services is reasonable.

5

The Court rejects Plaintiffs' request that it reconsider the rate at which fees were awarded for the time billed for the services of Mr. Gaudet covered by the initial fee petition. When the Court established Mr. Gaudet's reasonable hourly rate in connection with the initial petition, it did so based on a presumption that Mr. Gaudet had performed his work in this case out of his El Paso office because it had no evidence to the contrary before it. See Almanza III, 135 Fed. Cl. at 653.[5] Plaintiffs are not entitled to use their supplemental application to take a second bite at the apple by arguing and presenting evidence seeking a higher rate for services covered by the first fee petition.

Second, and in any event, the Court's decision to use El Paso hourly rates (rather than the prevailing rates in either Seattle or Berkeley) was and remains entirely appropriate. Plaintiffs did not retain Mr. Gaudet; they retained the Kern Law Firm as their counsel. See Pls.' Suppl. Appl. at 1–2, 5. The Kern Law Firm is located in El Paso, Texas, and Mr. Gaudet provided his services in this case under contract to that firm. See Almanza IV, 2018 WL 915071, at *2 (observing that Mr. Gaudet's work for the Kern Law Firm began on or around February 24, 2015). In addition, Mr. Gaudet maintained an office in El Paso, which was used as his address for purposes of the pleadings on the merits in this case, and he continues to at least maintain a mailing address there. And while his declarations are not entirely clear, it appears that when he started his work in this case in February 2015, he did so out of El Paso, and that almost half of the hours he billed in this case were billed for work performed in El Paso.[6] These are sufficient grounds to use the prevailing rates in El Paso as the applicable "local rates" for Mr. Gaudet.

None of Mr. Gaudet's arguments for the use of Seattle or Northern California rates are persuasive. First, Mr. Gaudet does not appear to have performed any of the work in this case out of his office in Seattle. And, so far as the Court can tell, Mr. Gaudet is not licensed to practice law in California. The Court declines to use a market in which Mr. Gaudet is not admitted to practice law as the measure of his hourly rate simply because he happened to reside in that

---

[5] While Plaintiffs presented evidence of awards to Mr. Gaudet in California and the state of Washington in their initial application, such evidence was presented only in support of the reasonableness of awarding Mr. Gaudet the Washington, DC forum rate, not in support of any argument that he should be awarded California or Seattle rates. And Mr. Gaudet made no representations in his initial declaration concerning what portion of the hours of work he performed in this matter was performed outside of El Paso. Indeed, the pleadings prepared during the merits phase of this case listed Mr. Gaudet's El Paso office address, not any address in California or Seattle. Pls.' Mot. for Summ. J. at 38, ECF No. 79.

[6] In Mr. Gaudet's supplemental declaration, he asserts that he performed 300.65 of the 564.15 hours he worked in this case "while" he resided and maintained an office in the Bay Area. See Pls.' Suppl. Appl. Ex. 3 ¶ 2. Even assuming that he is claiming that he actually performed this work in California, he fails to state where he performed the other 264 or so hours of work that he has billed in this matter; the Court therefore will again indulge a presumption that he did so in El Paso. See Jan. 24, 2018 Decl. of Robert J. Gaudet, Jr. in Supp. of Mot. to Intervene ¶¶ 19–22, ECF No. 141-1 (noting that in July 2015, Mr. Gaudet closed his El Paso office and moved to California, after which his "office in Seattle" served as his "primary address for work").

market while he performed 53% of his services in this case while under contract to an El Paso firm.[7]

For these reasons, use of the prevailing market rate in the El Paso area for a lawyer of reasonably comparable skill and experience to Mr. Gaudet was and remains appropriate and reasonable. The Court will therefore again apply an hourly rate of $380 to the hours sought on Mr. Gaudet's behalf.

### III. Reasonableness of the Hours Requested

As set out above, Plaintiffs seek compensation for an additional 822.5 hours worked by their various attorneys and their paralegals during the approximately nine months between their initial and supplemental applications. Also as noted above, during this period the parties litigated whether and to what extent Plaintiffs were entitled to attorneys' fees and whether the Court should approve the parties' settlement agreement.

For the reasons set forth below, the Court concludes that the hours claimed are excessive and in some instances inadequately documented. Accordingly, it has applied certain reductions to the hours claimed, as described below.

#### A. Hours Claimed for Work Relating to the Border Patrol Agents' Claims

As noted above, this case originally included both Customs and Border Protection Officers and Border Patrol Agents. Almanza II, 135 Fed. Cl. at 114. On July 26, 2016, however, the Court granted summary judgment for the government as to the claims asserted by the Border Patrol Agents. Almanza I, 127 Fed. Cl. at 528. The parties' settlement agreement related only to the claims asserted by the Customs and Border Protection Officers. Almanza II, 135 Fed. Cl. at 114.

Plaintiffs have acknowledged that they mistakenly requested reimbursement for hours of work devoted to the Border Patrol Agents' claims in their supplemental fee application. Pls.' Reply at 7–9, ECF No. 157. The Court agrees with Plaintiffs that their request includes 3.75 hours attributable to the Border Patrol Agents' claims and will deduct those hours from the award.

#### B. Hours Relating to Settlement Administration

The timesheets Plaintiffs submitted in support of their supplemental motion contain numerous entries that describe tasks relating to the administration of the settlement agreement. There are a total of 124.1 hours solely attributable to such work, as well as several block entries

---

[7] In a declaration filed in support of his motion to intervene, Mr. Gaudet indicated that he was living in California and that he maintained an office in Berkeley while his wife was pursuing post-graduate studies. Jan. 24, 2018 Decl. of Robert J. Gaudet, Jr. in Supp. of Mot. to Intervene ¶ 18. During this time period, he was apparently also working on a matter in the district court for the Central District of California, where he had been admitted pro hac vice. See Apr. 21, 2017 Decl. of Robert J. Gaudet, Jr. ¶ 2.

that include settlement administration tasks, among others. Of the total 124.1 hours claimed in individual entries, 67.15 are billed by Mr. Kern, 2.25 by Mr. Greenwald, and 54.7 are attributed to paralegal services.

The Court notes at the outset that the timesheets Mr. Kern submitted with Plaintiffs' initial fee application included an entry of thirty hours for "Additional Time Projected for OFO Settlement Administration." Pls.' Am. Mot. for Award of Att'ys' Fees, Expenses & Costs Ex. 4 at 36, ECF No. 114-4. The government did not object to this entry and the Court awarded fees for those projected hours in its decision. See Almanza III, 135 Fed. Cl. at 652–53. Plaintiffs, however, have apparently not offset that award against the amount being claimed for settlement administration in their supplemental petition. And, for the reasons that follow, the Court rejects Plaintiffs' requests for additional fees attributable to settlement administration tasks.

First, while the Court agrees that some settlements of overtime claims can prove administratively complex, this is not such a settlement. The agreement included a list of all eligible plaintiffs and the amount of back pay, incentive fees, and liquidated damages he or she was to receive under the settlement. Mot. to Approve FLSA Settlement, Enforce Stipulation, & Enter J. & Order Ex. A ("Settlement Agreement") ¶¶ 5–9, ECF No. 120-1. It provided that the government would send Plaintiffs' back pay checks to Mr. Kern, who would then distribute the checks to the individual plaintiffs. Id. ¶ 7. The government was to make a lump sum electronic payment to Mr. Kern in the amount of Plaintiffs' entitlement to liquidated damages and incentive fees. Id. ¶ 8. Mr. Kern was to deposit the lump sum amount into a trust account, which he agreed to distribute to the individual plaintiffs, subject to possible reductions for attorneys' fees and expenses. Id. The government was to issue W-2s to Plaintiffs for the portion of their recovery that was back pay and 1099s for the portions attributable to liquidated damages and incentive fees. Id. ¶ 9.

Ultimately, Plaintiffs' counsel, and not the government, took responsibility for issuing the 1099s for the liquidated damages and incentive fee payments. According to Plaintiffs, after it became apparent that the government was challenging Plaintiffs' right to recover any attorneys' fees at all, Plaintiffs' counsel decided that it would be prudent to update and revise the settlement disbursement database to account for the possibility that counsel's one-third contingency fee might need to be withheld from the liquidated damages and incentive fee portions of Plaintiffs' recovery. Pls.' Reply at 11–12. Plaintiffs claim that this effort was "very time consuming . . . because all of the distribution amounts needed to be recalculated to take into consideration the ongoing possibility of deducting the 1/3 contingency fee from the Plaintiffs' recovery." Id. at 10. The decision to update the database also allegedly necessitated multiple conferences with Plaintiffs' Steering Committee and with individual plaintiffs, as well as internal conferences amongst counsel. Id.

Moreover, Plaintiffs contend, and also because of the government's opposition to their motion, the award decision was delayed past the end of 2017. Plaintiffs claim that Mr. Kern was advised by a CPA that he needed to distribute the incentive fees and liquidated damages from his trust account to Plaintiffs by the end of 2017 so that he would not be required to treat these payments as income to himself on his 2017 tax return. Id. at 12–13. He was also apparently advised that he should issue 1099s to Plaintiffs at the same time. Id.

Plaintiffs contend that they are entitled to fees attributable to this updating of the database, as well as for the related meetings and time spent conferring with the CPA and processing the 1099s. The Court disagrees.

First, it is unclear to the Court why the mathematical adjustment required to "update" or "adjust" the database could not be readily and swiftly accomplished using the spreadsheet program in which the settlement database was created or why multiple meetings would need to be held to discuss this matter. See Settlement Agreement Attach. A, ECF No. 120-1. Second, contrary to Plaintiffs' contentions, the government is not responsible for counsel's decision to perform this additional work. There always existed a possibility that any fee award that Plaintiffs might receive would be insufficient to cover counsel's one-third contingency fee, given that the parties did not resolve the attorney fee issue as part of their settlement. Moreover, the government's decision to take issue with Plaintiffs' entitlement to any fee award at all was not unreasonable given that the initial fee petition failed to establish that Plaintiffs were prevailing parties under Buckhannon. Indeed, as discussed further below, counsel for Plaintiffs must shoulder a significant part of the responsibility for the prolonging of the attorney fee portion of this litigation because they failed to anticipate the need for this Court's approval of the settlement agreement.

With respect to Mr. Kern's meetings with the CPA, those appear unrelated to ensuring that Plaintiffs' rights under the settlement were protected. Instead, it appears that the CPA was providing advice to Mr. Kern regarding his potential tax liabilities. See Pls.' Reply Ex. 2, ECF No. 157-2. Further, in the settlement agreement, Plaintiffs agreed that the government would take care of issuing 1099s to Plaintiffs; it would be inappropriate, therefore, for fees to be awarded based on work that Mr. Kern chose to undertake for the apparent purpose of protecting his own interests.

Finally, Plaintiffs complain that the government did not provide Plaintiffs' back pay checks to Mr. Kern, as contemplated under the agreement; instead, the government insisted on making the payments by direct deposit to Plaintiffs' bank accounts, which also required counsel to contact Plaintiffs to secure account numbers. But the task of securing bank account numbers from Plaintiffs, while no doubt tedious and time consuming, is a clerical one. Paralegal time devoted to secretarial or clerical tasks is not reimbursable. Biery v. United States, Nos. 07-693L and 07-675L, 2014 WL 12540517, at *4 (Fed. Cl. Jan. 24, 2014), aff'd, 818 F.3d 704 (Fed. Cir. 2016); Hopi Tribe v. United States, 55 Fed. Cl. 81, 99–100 (2002).

In short, Plaintiffs are not entitled to any additional fees for billing related to the administration of the settlement agreement. Moreover, because counsel have also included several block billing entries that intermingle settlement administration tasks with other services, the Court will reduce each of those entries by 50% to account for the disallowed time. See Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007) (holding that a trial court has the "authority to reduce hours that are billed in block format," because "[t]he fee applicant bears the burden of documenting the appropriate hours expended in the litigation" and it is reasonable "to conclude that [the plaintiff] failed to carry [that] burden" where the plaintiff's counsel uses block billing "because block billing makes it more difficult to determine how much time was spent on particular activities"); Banas v. Volcano Corp., 47 F. Supp. 3d 957, 966–69 (N.D. Cal. 2014) (applying percentage reduction to all block billing entries because it prevented court from

9

determining whether hours spent on any individual task or the tasks as a whole were reasonable); Info. Scis. Corp. v. United States, 88 Fed. Cl. 626, 634–35 (2009) (applying 50% reduction to block time entries that included both reimbursable and non-reimbursable work); Cobell v. Norton, 407 F. Supp. 2d 140, 159–60 (D.D.C. 2005) (noting that "[c]ourts confronted with . . . block time entries have responded in a variety of ways" including "simply void[ing] 'the entire time entries billed as block time'" (quoting Reyes v. Nations Title Agency of Ill., Inc., No. 00 C 7763, 2001 WL 687451, at *1 (N.D. Ill. June 19, 2001))).

### C. **Allegedly "Duplicative and Unnecessary Time Entries"**

The government argues that "plaintiffs bill for apparently duplicative (but at least unjustified) hours for many of the tasks listed." Def.'s Opp'n to Pls.' Suppl. Appl. for Reasonable Att'ys' Fees & Costs (Def.'s Opp'n) at 8, ECF No. 151. It specifically highlights the time devoted to preparing for oral argument billed by both Mr. Kern and Mr. Greenwald. Id. at 8–9. The Court disagrees that this time was duplicative. It was not unreasonable to have the two attorneys most involved with the case attend the oral argument. Moreover, a similar amount of time billed for oral argument preparation makes sense as, contrary to the government's assertion, Mr. Greenwald presented Plaintiffs' initial oral argument and Mr. Kern presented Plaintiffs' rebuttal. Tr. of Oral Arg. at 34 (2017), ECF No. 135. Accordingly, the Court finds these hours were not unnecessary or duplicative. It similarly rejects the government's argument that there was unreasonable duplication of effort with respect to the briefing of the initial attorney fee application and the related briefing of the settlement approval issue.

The Court finds, however, that the number of hours relating to travel for the oral argument is not reasonable. Mr. Kern billed sixteen hours for travel from El Paso, Texas to Washington, DC on October 24, 2017. Pls.' Suppl. Appl. Ex. 1 Attach. A at 4. This entry stated "Travel to DC 14.0 (Additional prep for oral argument in transit 6.0); MW MG to prep for oral argument 2.0." Id. The next day, Mr. Kern only billed six hours relating to his return travel to El Paso.[8] Id. Plaintiffs do not explain this discrepancy or the apparently excessive time Mr. Kern has billed for travel to Washington and it appears unreasonable to the Court. The only logical conclusion appears to be that there has been a double-counting of Mr. Kern's travel time and time spent preparing for oral argument while traveling.

The Court thus concludes that Mr. Kern spent eight hours traveling to Washington on October 24, six hours of which he spent preparing for the oral argument. Those eight hours are compensable and the Court will reduce Mr. Kern's October 24 entry from sixteen hours to ten. On Mr. Kern's return trip, however, he did not perform any work on this case while traveling by plane back to El Paso. Id. Nor has he demonstrated that it was impossible for him to perform work on this case or any other while traveling. Accordingly, the Court will deduct 25% from the six travel hours billed on October 25 for time spent in airline travel during which Mr. Kern could

---

[8] By contrast, Mr. Greenwald only billed 10 hours for October 24, 2017, including travel time to Washington, DC and the meeting with Mr. Kern to prepare for the next day's argument. See Pls.' Suppl. Appl. Ex. 2 Attach. A at 3, ECF No. 140-2. Similarly, on October 25, he only billed 10.75 hours for an entry that included not only his return travel, but also the oral argument itself. Id.

have performed work but did not. See Bratcher v. United States, No. 15-986L, 2018 WL 1225032, at *6 (Fed. Cl. Mar. 9, 2018).

### D. Reductions for Hours Attributable to Counsel's Failure to Anticipate the Effect of Buckhannon on Their Fee Request

A significant number of the hours for which Plaintiffs seek fees were dedicated to efforts to salvage Plaintiffs' entitlement to fees in light of the government's Buckhannon-based objections. See, e.g., Pls.' Suppl. Appl. Ex. 1 Attach. A at 1–2. This Court is not persuaded by Plaintiffs' arguments that these hours are attributable to what they call a "Stalingrad" or "scorched earth" defense put forth by the government. See Pls.' Reply at 3–4. To the contrary, it is the Court's view that Plaintiffs themselves are at least partially to blame for the protracted attorney fee proceedings because they clearly failed to anticipate the impact of Buckhannon on Plaintiffs' entitlement to an attorney fee award when they entered the settlement agreement.

Buckhannon was decided in 2001, more than a decade before this case was filed and some fifteen years before it was settled. In Buckhannon, the Supreme Court rejected the theory that a plaintiff could be awarded fees as a "prevailing party" under a fee-shifting statute where its lawsuit served as the catalyst for a "voluntary change in the defendant's conduct" that "achieves the [lawsuit's] desired result." 532 U.S. at 601, 605–10. The Court reasoned that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." Id. at 605.

Mr. Kern and Mr. Greenwald, counsel experienced in FLSA and other overtime cases, should have been aware of the impact of Buckhannon and should have pressed during settlement discussions to include a provision requiring either Court approval of the settlement agreement or the incorporation of its terms into a judgment. See Almanza III, 135 Fed. Cl. at 649–50. This is particularly true given that, as the Court has found, judicial approval is required for a valid settlement of FLSA claims. See id.; Almanza II, 135 Fed. Cl. at 118–20. Indeed, Plaintiffs' counsel admitted at the hearing on their motion to approve the settlement agreement that the parties' failure to include such a provision was the result of an "oversight" on the part of Plaintiffs' attorneys. See Tr. of Oral Arg. at 5.

It is not reasonable to reward a prevailing party's attorney for his or her mistakes. See Greene v. Brown, 174 F. Supp. 3d 295, 299 (D.D.C. 2016); GE Franchise Fin. Commercial LLC v. Wormsby, No. CV-15-01924-PHX-NWV, 2016 WL 4181192, at *5 (D. Ariz. Aug. 8, 2016); Fang ex rel. Yang v. Sec'y of HHS, No. 10-33V, 2013 WL 4875120, at *5 (Fed. Cl. Office of the Special Masters Aug. 22, 2013). Accordingly, because the proceedings were protracted as a result of counsel's failure to anticipate the effect of Buckhannon on their right to recover fees, the Court will reduce by 30% the hours Plaintiffs claim for time their attorneys and paralegals spent working on settlement approval and on attorneys' fees after their initial application.[9]

---

[9] As noted above, Plaintiffs' counsel included a number of block billing entries in their timesheets that make it impossible for the Court to assess the time spent on any particular task included in the entry. Accordingly, where block entries contain settlement approval or attorneys' fees tasks along with other tasks not subject to reductions, the Court will reduce the hours

11

## IV.     Expenses

In Plaintiffs' supplemental attorney fee motion, the Kern Law Firm seeks an additional award of $3,765.27 in expenses. Pls.' Suppl. Appl. at 2; see also id. Ex. 1 Attach B. The government objects to the expenses sought by Plaintiffs, asserting that this amount includes a number of unreasonable requests, including more meals than it argues should be reimbursable for the short period of time Mr. Kern was in Washington for the October 2017 oral argument. Def.'s Opp'n at 4.

When a prevailing party requests an award of expenses, the court "may award only those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court, which expenses are those customarily charged to the client where the case is tried." Oliveira v. United States, 827 F.2d 735, 744 (Fed. Cir. 1987). Plaintiffs must submit adequate documentation in support of their request in order for the court to approve it. See Preseault v. United States, 52 Fed. Cl. 667, 679 (2002) (documentation is required because "[w]ithout sufficient detail, a court is unable to determine whether the hours, fees, and expenses are reasonable for any individual item invoiced").

The government specifically challenges as excessive the meal and hotel expenses incurred by Plaintiffs' counsel during the period covered by their supplemental fee request. With respect to Plaintiffs' counsel's travel to Washington, DC in October 2017, Plaintiffs have requested reimbursement of $95.30 for a meal at the Hamilton, $80.75 for a meal at POV Terrace, $50.90 for a meal at Pinea, and $504.47 for one night's lodging for Mr. Kern at the Washington Hotel. Pls.' Suppl. Appl. Ex. 1 Attach. B. They have also requested reimbursement of $163.51 for a meal eaten during a restaurant meeting between Mr. Kern and Plaintiffs' steering committee head in El Paso, Texas on October 27, 2017. Id.

In their reply, Plaintiffs claim that the meal expenses in Washington were incurred by Mr. Kern and Mr. Greenwald together. In light of that representation, the Court will approve as reasonable the expenses incurred in connection with counsel's meals in Washington, DC. The Court rejects, however, as unreasonable the charge of $504.47 for Mr. Kern's room at the Washington Hotel. That charge is excessive for a mid-week stay at a hotel in Washington, DC. Further, the fact that Plaintiffs decided not to seek reimbursement for Mr. Greenwald's equally expensive hotel room does not render the charge for Mr. Kern's room any more reasonable. The Court thus reduces this charge by 50%.

Finally, the Court rejects Plaintiffs' request to be reimbursed $163.51 for a meal that Mr. Kern had in El Paso with the head of the steering committee to update him regarding the status of the fee request. Plaintiffs explain that on the day the meeting was held, the steering committee head was en route from Arizona to Houston, driving a truck of "Government-owned fentanyl" to be used for canine detection training. Pls.' Reply at 6–7. For this reason, according to Plaintiffs, the steering committee head was "required to keep his truck in sight and quickly accessible"

---

claimed by 20%. And where such block billing entries contain settlement approval or attorneys' fees tasks and settlement administration tasks, the Court will reduce the hours claimed by 60% to account for both reductions.

while meeting with Mr. Kern. Id. at 7. Apparently, Mr. Kern chose the Mesa Street Grill for the meal because its "elevated front dining area . . . has large windows that look directly out on the parking area," which allowed Plaintiffs' steering committee head to maintain a view of his truck. Id.

Plaintiffs have not submitted any documentation in support of this expense. Moreover, the Court is somewhat bemused by Plaintiffs' proffered explanation for holding a meeting with the steering committee head over a meal at what appears to be one of El Paso's more expensive restaurants. The Court presumes that there exist other less expensive dining options off the highway near El Paso where a table overlooking the parking lot might also be secured. Perhaps the meeting could have been held over a cup of coffee. In fact, to the extent that an update was required, it could have been accomplished by telephone. The charge is therefore disallowed.

The government does not object to any other expenses or costs that Plaintiffs claim. The Court has reviewed the remaining expenses and costs and finds them reasonable and necessary to the prosecution of this case. Accordingly, the Court awards Plaintiffs $3,179.05 in expenses and costs.

### V.     Final Award

Based on the foregoing, the Court hereby awards Plaintiffs $213,114.25 in additional attorneys' fees, as follows:

| Attorney/Paralegal | Hourly Rate | Number of Hours | Total |
|---|---|---|---|
| David L. Kern | $450 | 244.31 | $109,939.50 |
| Kern Law Firm Paralegals | $115 | 20.65 | $2,374.75 |
| Mark L. Greenwald | $450 | 134.57 | $60,772.50 |
| Robert J. Gaudet | $380 | 95.85 | $36,421.10 |
| Robert E. McKnight | $350 | 10.3 | $3,606.40 |

Additionally, Plaintiffs are awarded $3,179.05 in expenses and costs.

### CONCLUSION

Based on the foregoing, Plaintiffs' supplemental motion for attorneys' fees, expenses, and costs is **GRANTED-IN-PART** and **DENIED-IN-PART** and Plaintiffs are awarded $213,114.25 in additional attorneys' fees and $3,179.05 in expenses and costs. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge
